No. 18,040.

ALFRED E. MATTHEWS *v.* PEOPLE OF THE
STATE OF COLORADO.
(314 P. [2d] 906)

Decided August 26, 1957.

Mr. BEN KLEIN, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. JOHN W. PATTERSON, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

PLAINTIFF in error, herein referred to as Matthews, was arrested in Denver, Colorado, pursuant to a warrant issued by the Governor of Colorado. The warrant for arrest had been issued upon demand from the Governor of Nebraska seeking the return of Matthews to that state. Upon his arrest Matthews gave fugitive bail and applied to the district court for a writ of habeas corpus.

Hearing was had, the application for the writ denied and Matthews was remanded to the custody of the officer of the State of Nebraska. From this final judgment Matthews brings the case here on writ of error.

On April 10, 1956, a criminal complaint was filed in the County Court of Cheyenne County, Nebraska, charging Matthews with failure to support his wife and children—a felony under Nebraska law. On the same day the County Attorney of said Cheyenne County filed with the Governor of the State of Nebraska his verified petition requesting said Governor to issue his requistion *requiring* the Governor of the State of Colorado to apprehend and deliver Matthews for *return* to Nebraska. The petition, the prayer thereof and the verification contain the following langauge:

"* * *; that on or about the 15th day of September, 1955, the said Alfred E. Matthews * * * *left the State of Nebraska* and is now as your petitioner verily believes in the County of Denver, State of Colorado. * * * Wherefore: Your petitioner prays * * * that W. W. Schulz of Cheyenne County * * * *pursue, receive and return* * * * Matthews to Cheyenne County * * * the ends of justice require * * * *the return* of the accused * * * that the ends of public justice require that *said fugitive* be brought to * * * Nebraska * * * I believe I have sufficient evidence to secure the conviction of *said fugitive* * * * (above emphasis and all emphasis to follow supplied).

On April 11, 1956, the Governor of Nebraska appointed W. W. Schulz agent to take Matthews to Nebraska, the order appointing contains the following:

"And, whereas, *agreeably to a provision of the Constitution and an Act of Congress passed on the twelfth day of February, in the year of our Lord, one thousand seven hundred and ninety-three,* I have made application to His Excellency, the Governor of the State of Colorado, for the delivery of the said Alfred E. Matthews *as a fugitive from justice.* * * * Therefore

\* \* \* W. W. Schulz \* \* \* being hereby commanded *the said fugitive* to hold in safe custody until delivered by due course of law."

On April 11, 1956, the Governor of Nebraska issued his requisition directed to the Governor of Colorado and attached thereto as supporting documents the aforementioned criminal complaint, verified petition and order appointing. The requisition contains the following langauge:

"Now, therefore, *pursuant to the provisions of the constitution and laws of the United States* in such case made and provided, I do hereby *require* the said Alfred E. Matthews be apprehended and delivered to W. W. Schulz \* \* \* to receive and convey him to the State of Nebraska, \* \* \* ."

On April 13, 1956, the Governor of Colorado purporting to act under authority granted by C. R. S. '53, 60-1-7:

"Issue of governor's warrant.—If the governor decides that the demand should be complied with, he shall sign a warrant of arrest, which shall be sealed with the state seal, and be directed to any peace officer or other person whom he may think fit to entrust with the execution thereof. The warrant must substantially recite the facts necessary to the validity of its issuance." Issued his warrants for the arrest and delivery of Matthews, which warrants contain the following language:

"Whereas it has been represented to me by the Governor of the State of Nebraska *that Alfred E. Matthews a person subject to extradition from the State of Colorado under Section 60-1-6 of Colorado Revised Statutes 1953* stands charged with a felonious crime \* \* \* and the said governor \* \* \* *has in pursuance of the laws of the State of Colorado demanded* \* \* \* that \* \* \* Matthews \* \* \* be arrested and delivered to \* \* \* the state of Nebraska."

"We hereby command you to deliver \* \* \* Matthews \* \* \* in order that the said Alfred E. Matthews may be conveyed out of this state, *pursuant to the laws of Colo-*

*rado and the requisition of* \* \* \* *the governor of Nebraska* \* \* \* ."

Evidence presented in support of the application for a writ of habeas corpus established without contradiction, and without an effort to contradict the same, that Matthews was born in Colorado, that he was living in Denver with his wife and children until late in 1954 when his wife left him and took their children to Nebraska. Matthews remained in Denver; he had never lived in Nebraska, in fact had never been in the State of Nebraska until February 1956, and then only stopped off on his way to Detroit to report to the County Attorney, consequently could not be extradited as a fugitive. When evidence of these facts was presented in the habeas corpus proceedings the trial judge should have granted the writ and discharged Matthews from custody.

■ Statutes providing for the arrest and extradition of *fugitives* are in derogation of constitutional guarantees of immunity from arrest and must be strictly construed. *Henry vs. McArthur,* 122 Colo. 474; 223 P (2d) 621. A fortiori our statute C.R.S. '53 60-1-6 providing for extradition of non-fugitives must be strictly construed and strictly complied with in proceedings thereunder.

"Only by faithfully following the provisions of the statute may a person be lawfully deprived of his liberty and extradited from an asylum state to another state, there to be tried for the commission of a crime." *United States vs. Meyering,* 75 Fed. 2, 716.

"The provisions \* \* \* authorizing the issuance of warrants of extradition in cases where the accused is not a fugitive, may deprive petitioner of his liberty and must, therefore, be strictly interpreted." *Commonwealth v. Heinz,* 141 Pa. Sup. 158; 14 Atl. 2d 875.

■ The Governor of Colorado has no inherent powers of arrest and surrender. His rights and duties are clearly defined; he cannot proceed as a volunteer but is limited to acting pursant to a *demand* or a *request*

from a sister state and then only in strict conformity with law.

█ A sister state may proceed in either of two ways: (1) make a demand upon any state for return of a fugitive. On receipt of such lawful demand it is the *duty* of the governor *under the constitution and laws of the United States and our enabling statute C. R. S. '53 60-1-2 to have "arrested and delivered"* the fugitive. In such case the *demanding* state does not appear on bended knee seeking a favor, but appears as a sovereign state *demanding* rights granted it by the Constiution and laws of the United States. In making the arrest and delivery under such *demand* the governor of the asylum state finds his duty, authority and protection under the Constitution and laws of the United States and C. R. S. '53-60-1-2 and not elsewhere. (2) Make *demand* upon the Governor of Colorado for surrender under 60-1-6 of "Any person in the state (Colorado) charged in such other state in the manner provided in Section 60-1-3 with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand * * *." Upon receipt of such *demand* (more properly called a request for the governor of Nebraska was in no position to demand anything of the Governor of Colorado under 60-1-6) the Governor of Colorado in the exercise of his discretion *may* cause the arrest and surrender and finds his authority and protection under 60-1-6 and not elsewhere.

In *Stobie v. Barger,* 129 Colo. 222; 268 P. (2d) 409, the Governor of Indiana made a proper request on Colorado for the arrest and surrender of Stobie; Indiana requested the Governor of Colorado to exercise his discretionary power granted by 60-1-6. The Governor of Colorado ignored the request to proceed under 60-1-6 and caused the arrest and surrender "in pursuance of the Constitution and laws of the United States * * *." In ordering Stobie's release we said:

"The requisition was made under similar, if not identical, statutes in force in both Colorado and Indiana. It is based entirely upon the provisions of said section 6 (C.R.S. '53 60-1-6). The Governor of the State of Colorado issued his warrant under the provisions of Section 3 of our said Uniform Criminal Extradition Act. His warrant recites his authority therefor to be the provisions of the constitution and laws of the United States which have no application whatever to the instant case. * * * The warrant issued is not in accordance with the requisition; consequently, it is wholly ineffectual for any purpose."

The case now before us is the converse of the Stobie case. In the case at bar demand was made for the arrest and delivery pursuant to the Constitution and laws of the United States; arrest and surrender were made pursuant to the laws of the State of Colorado, 60-1-6.

Nebraska's demand could not be lawfully granted and should have been denied for Matthews admittedly was not a fugitive. *Teter v. People,* 129 Colo. 268 P. (2d) 407; *Wigchert v. Lockhart,* 114 Colo. 485; 166 P. (2d) 988; *Stobie v. Barger,* supra.

In issuing this warrant for the arrest and surrender of Matthews pursuant to 60-1-6 the Governor of Colorado was proceeding as a volunteer, on his own, unfortified with a lawful demand, or in fact any demand whatsoever that he proceed as he did under 60-1-6; the warrant is unlawful and void.

The judgment of the trial court is reversed and the cause remanded with instructions to grant Matthews' application for writ of habeas corpus, to make the writ permanent and discharge Matthews.

Mr. Justice Knauss dissenting.

I respectfully dissent. In habeas corpus proceedings following an extradition order the guilt or innocence of the petitioner is not an issue. Conjecture and surmise

cannot supplant that which abundantly appears as a basis for the extradition warrant.

This court should not negative the order of our Chief Executive where, as here, it is manifest that Matthews was charged with non-support while in Colorado, resulting in a crime in Nebraska. Even a casual reading of the record discloses this, and while some superfluous words may have been used by the Governor of Nebraska, it manifestly appears and surely petitioner and his counsel knew exactly with what Matthews was asked to respond to in Nebraska. The matters which form the basis for the majority opinoin were not raised in the trial court by Matthews' counsel. It is patent that the Governor of Nebraska and our Chief Executive acted pursuant to C.R.S. '53, 60-1-6.

We cannot conjecture that Matthews' wife deserted him. It is just as reasonable under this record to say that Mrs. Matthews went to live with her mother in Nebraska in order that she and the children could have the necessities of life.

In essence there is only one question involved in the instant case, viz.:

Did the fact that the Governor of Nebraska recited as his authority for his requisition the provisions of the Constitution and laws of the United States void the requisition and the rendition warrant? I think not. *Ex Parte Oxford,* 157 Tex. Cr. App. 512, 249 S.W. 2nd 917 is a case where the Governor of Oklahoma sent a requisition to the Governor of Texas and without stating that the person demanded was a fugitive from justice, stated that in making the requisition he was acting by virtue of the Constitution and laws of the United States. The Chief Executive of Texas granted extradition under the Texas applicable statute and the Court of Criminal Appeals upheld him. On rehearing the court said:

" 'Appellant contends that we were in error in holding that the extradition in the instant case was authorized by Section 5 of the Support Act. His contention is

that, since the requisition or demand of the Governor of Oklahoma, by its terms, recited that in issuing the same he was acting by virtue of the *Constitution and laws of the United States,* these proceedings should be judged as to their legality upon the quoted authority and no more.

" 'He contends that Section 5 of the Support Act and Section 6 of the Extradition Act, Art. 1008a, Vernon's Ann, C.C.P., may not be considered by this Court, since the Governor of Oklahoma did not predicate his requisition upon them by name or number or other allegation.

" 'We are not here passing upon the authority under which the Governor of Oklahoma acted but must confine this inquiry as to the legality of the ruling of the trial court in honoring the executive warrant of the Governor of Texas.

" 'The authority under which the Governor of Oklahoma acted is not an issue at such hearing.

" 'Remaining convinced that we properly disposed of this cause originally, appellant's motion for rehearing is overruled' "

I find myself in complete harmony with the holding of the Texas court. I fail to see that *Stobie v. Barger,* 129 Colo. 222, 268 P. (2d) 409 is in point. The warrant in the instant case followed the demand of the Governor of Nebraska. The obligation of husbands and fathers to provide reasonable support for their families in my opinion transcends any technical objection to the proceeding which may eventually result in a trial under the uniform non-support law. The Oxford case is apparently the only reported case in which the identical question has been decided.

I am satisfied that the pertinent statutes were complied with and that the trial court correctly denied the writ of habeas corpus. If Matthews has a defense I am sure the courts of Nebraska will grant him a fair and impartial trial, and that he should not be permitted to

remain here in defiance of our laws and those of the Commonwealth of Nebraska. There is a definite purpose to be attained under the non-support statutes, and according to my thinking the officers who seek to enforce them should not be handicapped in their efforts by highly technical and hypercritical holdings, even though surplus words may appear in the demand and in the warrant issued by the Governor of Colorado, who in no sense was a "volunteer."