GEORGE DUTIL *v.* DONALD RICE ET AL.

SUPERIOR COURT          HARTFORD COUNTY          FILE NO. 207217

Memorandum filed April 7, 1977

*Silvester & Daly,* and *Emil A. Petke,* for the plaintiff.

*George D. Stoughton,* state's attorney, for the defendants.

SIDOR, J. The plaintiff applied to this court for a writ of habeas corpus to contest the validity of the governor's extradition warrant under which he is being held for rendition to the authorities of the state of Maine. The plaintiff contests the validity of the extradition warrant on the ground, inter alia, that he was not present in that state at the time the crime for which he stands indicted in that state was alleged to have been committed and that he did not flee from that state's justice.

The requisition papers issued by the governor of the state of Maine and the extradition warrant issued by the governor of Connecticut were filed with the court and indicate the following: The plaintiff stands indicted in Maine for a violation of Me. Rev. Stat. § 17-1601, cheating by false pretenses. The grand jury charged in substance that on September 14, 1975, in Jonesport, Maine, the plaintiff purchased 10,000 pounds of live lobster from Beals and Jonesport Co-Operative, Inc., which he paid for with a check in the amount of $17,520, drawn on his Connecticut bank, at a time when there were insufficient funds in his account for the payment of the check. On the basis of the indictment, the state's attorney for Washington County, Maine, requested the governor of that state to issue a requisition to the governor of Connecticut for the plaintiff's return, representing that the plaintiff "was in the State of Maine on or about [September 14, 1975] and . . . to avoid prosecu-

tion, fled from the jurisdiction of this state, and is now a fugitive from justice and is within the jurisdiction of the State of Connecticut. . . ." Maine's governor complied with that request and issued his requisition for the plaintiff's return, representing that the plaintiff stands charged with a crime under Maine law, "committed in the County of Washington, in this State; he having been in this State at the time of the commission of said crime, and it having been represented to me that he has fled from the justice of this State. . . ." The governor of Connecticut determined to comply with this request and issued her extradition warrant for the plaintiff's return to Maine. The warrant recited that the plaintiff stood charged with having committed a crime in Washington County, Maine, that he had fled from justice in that state and that he had taken refuge in Connecticut.

At the hearing held on the plaintiff's application the parties entered into a stipulation of the following facts: In September, 1975, the plaintiff was doing business as Northeast Lobster Company. On September 13, 1975, he ordered 10,000 pounds of lobster from Beals and Jonesport Co-Operative, Inc. (hereinafter referred to as the Co-Op), of Jonesport, Maine. Prior to that time, he had done a substantial amount of business with the Co-Op. On September 14, 1975, one of his employees went to Jonesport with a refrigerated truck and picked up the 10,000 pounds of lobster, but the plaintiff was not in Maine on that day. His employee gave the Co-Op a check for $17,520 for the lobsters. The check was drawn on the account of Northeast Lobster Company and was signed by the plaintiff. The employee returned to Connecticut with the lobsters and another driver took the truck to New York where the lobsters were to have been sold. In New York it was discovered that a substantial number of the lobsters were dead,

weak or rotten. One of the prospective purchasers bought about 350 pounds of the lobsters which he felt were good, and none of the others accepted any. The plaintiff was unable to dispose of the balance of the lobsters and he telephoned the Co-Op on September 15 to discuss the matter. He then telephoned a cooperative in New Harbour, Maine, and arranged to have the balance of the lobsters taken there to see whether any of them could be salvaged. On September 18, 1975, the check for $17,520 was presented at the plaintiff's bank. At that time, the balance in his corporate account was $1536. The manager of the bank called him and advised him of the overdraft, and the plaintiff said he wanted to stop payment. He was a long-time customer and the bank would have paid the check if requested to do so. The plaintiff was so advised, but he insisted that the check not be honored. The check was returned to a bank in Maine for insufficient funds. On September 22, 1975, a stop-payment order was executed by the plaintiff and he deposited $22,000 in the account. The check was presented again at the plaintiff's bank on October 3, 1975, but was returned owing to the stop-payment order.

Both Connecticut and Maine have adopted the Uniform Criminal Extradition Act. General Statutes §§ 54-157 through 54-185; Me. Rev. Stat. §§ 15-201 through 15-229. That act provides for both "fugitive" and "nonfugitive" extraditions. Section 3 of the act, § 54-159 of the General Statutes, provides for the return to another state, upon a proper demand by the executive authority of that state, of any person found in this state who is charged with having committed a crime in the other state and is a fugitive from that state's justice. Section 54-159, governing "fugitive" extraditions, implements the obligation of the governor under article IV § 2 of the United States constitution to

surrender fugitives upon the proper demand of the governor of another state. See *Carino* v. *Watson,* 171 Conn. 366, 371. When extradition is sought under this section, the person demanded may resist extradition by proving, in a habeas corpus proceeding, that he was not present in the demanding state at the time of the commission of the alleged offense and is, therefore, not a fugitive from its justice. *Ross* v. *Hegstrom,* 157 Conn. 403, 411–12; *Moulthrope* v. *Matus,* 139 Conn. 272, 275, cert. denied, 345 U.S. 926; *Taft* v. *Lord,* 92 Conn. 539; see *Hyatt* v. *Corkran,* 188 U.S. 691. From the stipulation it appears that the plaintiff has met his burden of proof, and the defendant does not seriously maintain that the plaintiff is subject to extradition as a fugitive.

The defendant instead urges this court to deny the plaintiff's application on the ground that, in any event, he is subject to extradition under § 6 of the Uniform Act, § 54-162 of the General Statutes, as a nonfugitive. That section provides for the surrender, upon a proper demand, of any person in this state charged in the demanding state with committing an act in this state, or in a third state, intentionally resulting in a crime in the demanding state. The defendant argues that this section authorizes the extradition of the plaintiff, and that the recitals in the Connecticut governor's extradition warrant that she has received and is honoring a requisition for the return of a fugitive are mere surplusage and may be disregarded. This court cannot adopt that position.

Since this is a uniform law, precedents from other states are particularly valuable in construing its provisions. See General Statutes § 54-185. The courts of other states have held that, where it clearly appears from the requisition papers read together, that a person is sought as a nonfugitive, the fact

that the governor of the demanding state or the rendering state refers to him as a fugitive may be disregarded. See, e.g., *Moser* v. *Zaborac,* 514 P.2d 12 (Alaska); *In re Cooper,* 53 Cal. 2d 772; *Clayton* v. *Wichael,* 258 Iowa 1037; *Greenbaum* v. *Darr,* 220 Kan. 525; *Vetsch* v. *Sheriff,* 14 Wash. App. 971. The rationale for this rule was well stated in *In re Cooper,* supra, 779: "Protection from unjustified extradition does not lie in reading into the extradition laws purely technical requirements that a forewarned prosecutor could easily meet, but in the sound judgment of the respective Governors charged with the administration of those laws." But where the requisition papers indicate that a person is sought as a fugitive, and that person proves in a habeas corpus proceeding that he is not a fugitive, the extradition cannot be sustained on the theory that the person could have been sought as a nonfugitive. See *Conrad* v. *McClearn,* 166 Colo. 568; *Matthews* v. *People,* 136 Colo. 102. The reason for this rule is that governors act under compulsion of the federal constitution in honoring fugitive extradition requisitions, but they possess a legal discretion to consider and determine whether to comply with nonfugitive extradition requests under § 6 of the Uniform Act. *Matthews* v. *People,* supra; cf. *Kujala* v. *Headley,* 193 Neb. 1. The requisition papers, including the request by the state's attorney for Washington County, Maine, to that state's governor for the issuance of a requisition, all clearly indicate that the plaintiff was sought as a fugitive, and Connecticut's governor responded by issuing her fugitive extradition warrant. While the majority of those papers are forms to be filled out, and therefore understandably contain recitals applicable to fugitive extraditions, the Washington County state's attorney's request contains a typewritten statement of the charge against the plaintiff which

states that he committed the crime in that county. As an officer of that state's courts, Washington County's state's attorney can be properly held to a high standard of accuracy in preparing papers for his governor's consideration. Since it affirmatively appears that neither governor exercised the informed legal discretion conferred by § 6 of the Uniform Act to request or surrender the plaintiff, who was not a fugitive, this court will not usurp their proper functions and validate the extradition warrant under § 54-162 of the General Statutes.

The plaintiff is ordered discharged from custody forthwith.