James Hill *v.* Richard E. Blake

Speziale, C. J., Peters, Parskey, Armentano and Shea, Js.

Argued December 1, 1981—decision released March 9, 1982

*Ira B. Grudberg,* with whom, on the brief, was *Karen F. Tross,* for the appellant (plaintiff).

*John A. Connelly,* assistant state's attorney, with whom, on the brief, were *Francis M. McDonald,* state's attorney, and *Bradford J. Ward,* assistant state's attorney, for the appellee (defendant).

PARSKEY, J. The issues presented in this case are whether the indictment and requesting papers sent to the state of Connecticut by the state of New Jersey were sufficient to extradite the plaintiff to New Jersey under the Uniform Criminal Extradition Act[1] (the act) and whether the rendition of the plaintiff as a nonfugitive under section 6 of the act[2] was in error.

On September 11, 1978, the plaintiff was indicted by a grand jury of the state of New Jersey for con-

---

[1] The Uniform Criminal Extradition Act has been adopted in 48 states as well as in the Panama Canal Zone, Puerto Rico, and the Virgin Islands. Mississippi, South Carolina, and the District of Columbia have not adopted the act. In Connecticut, the act appears at General Statutes §§ 54-157 through 54-185 and in New Jersey at N.J. Stat. Ann. (West) 2A:160-6 to 2A:160-35. In 1980, the National Conference of Commissioners on Uniform State Laws approved a new act entitled Uniform Extradition and Rendition Act to supersede the Uniform Criminal Extradition Act. Adoption of this new act awaits the states' consideration and approval. 11 U.L.A. 51-304 (1974 & Sup. 1981).

[2] Section 6 of the act appears at General Statutes § 54-162 and reads as follows: "Sec. 54-162. RETURN TO ANOTHER STATE OF PERSON WHOSE ACT IN THIS STATE CAUSED CRIME. The governor of this state may also surrender, on demand of the executive authority of any other state, any person in this state charged in such other state in the manner provided in section 54-159 with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand, and the provisions of this chapter not otherwise inconsistent shall apply to such cases, even though the accused was not in that state at the time of the commission of the crime and has not fled therefrom."

spiracy to obtain, possess and distribute a controlled dangerous substance, approximately 18,000 pounds of marijuana, in violation of New Jersey law. The plaintiff was arrested on June 11, 1979 at Bethlehem, Connecticut by Connecticut state police pursuant to a warrant issued by a New Jersey judge and was arraigned the following day at the Superior Court in Waterbury, Connecticut. At that arraignment, the plaintiff refused to waive extradition to the state of New Jersey. On September 5, 1979, the governor of New Jersey requested that the governor of Connecticut cause the plaintiff to be apprehended and delivered to certain named police officers of the state of New Jersey for conveyance to that state to be dealt with according to law. On or about September 6, 1979, the governor of Connecticut issued her extradition warrant ordering the plaintiff to be turned over to New Jersey authorities.

While in the custody of Connecticut State Trooper Richard E. Blake, the plaintiff applied for a writ of habeas corpus claiming that (1) the Connecticut rendition was not responsive to the New Jersey requisition because the governor of New Jersey requested the plaintiff as a "fugitive" and the governor of Connecticut extradited him as a "non-fugitive," (2) the New Jersey indictment and requisition papers failed substantially to charge him with a crime against the laws of the demanding state, and (3) section 6 of the act which permits the extradition of nonfugitives is unconstitutional. On July 25, 1980, the court, *Henebry, J.,* denied the plaintiff's application and this appeal followed, presenting issues one and two, supra, for determination by this court. Issue three has not been pursued on appeal.

## I

The Uniform Criminal Extradition Act was prepared in 1926 to codify the practice of interstate extradition of fugitives, a right created by the United States constitution[3] and a process incompletely regulated by federal law. Commissioners' Prefatory Note, Uniform Criminal Extradition Act, 11 U.L.A. 52–53; see *Narel* v. *Liburdi*, 185 Conn. 562, 565, 441 A.2d 177 (1981), cert. denied, 456 U.S. 928, 102 S. Ct. 1974, 72 L. Ed. 2d 443 (1982); *Glavin* v. *Warden*, 163 Conn. 394, 395n, 311 A.2d 86 (1972). Section 6 of the act, however, was a creation of the National Conference and was intended to reach extradition of one who commits a crime against the laws of a state by acts done outside of that state, a situation not covered by existing law. Handbook of the National Conference of Commissioners on Uniform State Laws & Proceedings, p. 591 (1926). "Modern communication and transportation facilitate the commission of crimes across state lines . . . . [T]he criminal who operates from without the state's borders poses a continuing threat. Since his conduct may be undetected or apparently harmless in the state where he acts, the only effective impetus for prosecution may come from the state that suffers the harm. Far more divisive than a state's refusal to extradite a fugitive for a past offense would be its unwitting provision not only of a base of operation but of an asylum for those who commit crimes without being personally present at the place where

---

[3] The extradition clause provides that: "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime." U.S. Const., art. IV § 2, cl. 2.

their crimes are consummated." *In re Cooper,* 53 Cal. 2d 772, 776, 349 P.2d 959 (1960). By an amendment approved in 1932, the present version of section 6 permits extradition not only from the state in which the nonfugitive acted but also from any state into which he may thereafter move. Handbook of the National Conference of Commissioners on Uniform State Laws & Proceedings, p. 407 (1932). Since the extradition clause of the United States Constitution neither requires nor prohibits enactment of state laws governing nonfugitive extradition, enforcement of section 6 is a matter of comity between the states.[4] Commissioners' Prefatory Note, Uniform Criminal Extradition Act, 11 U.L.A. 53. See also *In re Cooper,* supra, 775; *Matthews* v. *People,* 136 Colo. 102, 107, 314 P.2d 906 (1957); cf. *New York* v. *O'Neill,* 359 U.S. 1, 6, 79 S. Ct. 564, 3 L. Ed. 2d 585 (1959) (enforcement of uniform act to secure attendance of out-of-state witnesses in criminal proceedings is a matter of comity). Because the act is a uniform law, decisions from other states are valuable for the interpretation of its provisions. *Cain* v. *Moore,* 182 Conn. 470, 473, 438 A.2d 723 (1980), cert. denied, 454 U.S. 844, 102 S. Ct. 157, 70 L. Ed. 2d 129 (1981); *Dutil* v. *Rice,* 34 Conn. Sup. 78, 82, 376 A.2d 1119 (1977). In addition, at oral argument, both sides agreed, as do we, that the recent decision by the United States Supreme Court in *Michigan* v. *Doran,* 439 U.S. 282, 99 S. Ct.

---

[4] On the other hand, the interpretation of interstate agreements on subject matter appropriate for congressional legislation, which require and receive congressional consent, presents a question of federal law. *Cuyler* v. *Adams,* 449 U.S. 433, 438–42, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981) (Interstate Agreement on Detainers). See generally, 1A Sutherland, Statutory Construction, Treaties & Compacts §§ 32.03, 32.05, 32.09; Engdahl, "Characterization of Interstate Arrangements: When Is A Compact Not A Compact?," 64 Mich. L. Rev. 63 (1965); comment, "Federal Question Jurisdiction to Interpret Interstate Compacts," 64 Geo. L.J. 87 (1975).

530, 58 L. Ed. 2d 521 (1978), involving fugitive extradition applies by analogy to cases of non-fugitive extradition.[5]

We turn to the plaintiff's claim that the rendition warrant was void because the governor of Connecticut extradited him as a nonfugitive when the requesting papers had referred to him as a "fugitive." Where it clearly appears from the requisition papers read together that the accused is sought as a fugitive, a rendition warrant referring to him as a nonfugitive is ineffectual. *Matthews* v. *People,* supra, 106–107; cf. *Stobie* v. *Barger,* 129 Colo. 222, 268 P.2d 409 (1954) (rendition warrant is void if accused is sought as a nonfugitive and sent as a fugitive). Inattention to certain technicalities, however, will not render void the extradition of the accused, as the effect of such a decision would be to exalt form over substance. *In re Cooper,* supra, 779; *Moser* v. *Zaborac,* 514 P.2d 12 (Alaska 1973). When it appears that the requesting papers were deemed sufficient by the executive authority of the respective states for requisition and rendition, "the judiciary should not interfere, on *habeas corpus,* and discharge the accused, upon technical grounds . . . unless it be clear that what was done was in plain contravention of law." *Compton* v. *Alabama,* 214 U.S. 1, 8, 29 S. Ct. 605, 53 L. Ed. 885 (1909) (review of fugitive extradition); see also *Fernandez* v.

[5] *Michigan* v. *Doran,* 439 U.S. 282, 289, 99 S. Ct. 530, 58 L. Ed. 2d 521 (1978), limits the inquiry of the court considering release on habeas corpus to a determination of: "(a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive," or in this case, whether the petitioner is a nonfugitive. See also *Narel* v. *Liburdi,* 185 Conn. 562, 565, 441 A.2d 177 (1981), cert. denied, 456 U.S. 928, 102 S. Ct. 1974, 72 L. Ed. 2d 443 (1982).

*Phillips,* 268 U.S. 311, 45 S. Ct. 541, 69 L. Ed. 970 (1925). Although the requesting papers at times referred to the plaintiff as a "fugitive," the same papers clearly described him as a nonfugitive: "said James Hill did intentionally commit various Overt Acts outside the State of New Jersey resulting in the offense of conspiracy within the State of New Jersey . . . ." The rendition warrant, a standard fugitive form altered for use for nonfugitive extradition, conforms to the request in that it indicates that the plaintiff committed acts in Connecticut and elsewhere "resulting in a crime in the State of New Jersey." We will not grant the plaintiff's request to focus our inquiry on designation rather than characterization.[6]

## II

The plaintiff also challenges the sufficiency of the requesting papers claiming that, on their face, they fail substantially to charge him with a crime against the laws of New Jersey. The court below in reviewing extradition under the guidelines of *Michigan* v. *Doran,* supra, 289, was limited to the question of whether the documents charged the plaintiff with a crime under section 6 of the act.

The plaintiff concedes that the return of an indictment against him constitutes probable cause that he committed a crime. *Michigan* v. *Doran,* supra, 290; *Giordenello* v. *United States,* 357 U.S. 480, 487, 78 S. Ct. 1245, 2 L. Ed. 2d 1503 (1958). The principles of comity and full faith and credit in the United

---

[6] We are not unmindful of the cases holding a rendition warrant void if the accused, requested as a fugitive or nonfugitive, proves in a habeas corpus proceeding that his status does not actually conform to the status indicated on the extradition papers. See, e.g., *Dutil* v. *Rice,* 34 Conn. Sup. 78, 83, 376 A.2d 1119 (1977). In his habeas proceeding, the plaintiff, however, at no time claimed that he was not a nonfugitive.

States constitution require that the sister states honor this finding in the context of extradition.[7] *Michigan* v. *Doran,* supra, 287–90. The plaintiff contends that it is not enough to show that he has been charged with a crime by the demanding state but that the papers must facially show the commission of a section 6 crime. According to the plaintiff, the finding of probable cause as evidenced by the fact of the returned indictment is insufficient substantially to charge him with violating the laws of New Jersey; see *Pierce* v. *Creecy,* 210 U.S. 387, 404–405, 28 S. Ct. 714, 52 L. Ed. 1113 (1908); *Munsey* v. *Clough,* 196 U.S. 364, 374, 25 S. Ct. 282, 49 L. Ed. 515 (1905); unless a description of his allegedly criminal activity appears on the face of the documents. The plaintiff claims that the indictment names him among various people who committed various acts in various states and countries which resulted in the violation of New Jersey law but that it fails to show acts by the plaintiff himself which specifically demonstrate his intent to violate New Jersey law. We agree that the documents must not simply charge the plaintiff with a crime but that they must specifically charge him with committing acts outside New Jersey which intentionally resulted in the violation of New Jersey law. We think, however, that this indictment does in fact adequately describe acts done outside the state which resulted in probable cause to believe that the plaintiff has committed the crime of conspiracy to violate the drug laws of New Jersey.

The plaintiff has culled from the indictment the specific acts attributable to him, and only those acts,

[7] Article fourth, § 1 of the United States constitution provides that: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."

and argues that they do not establish that he committed the crime of conspiracy in New Jersey. By definition, however, one does not conspire alone. Conspiracy is an agreement between two or more persons to do an unlawful act or a lawful act by unlawful means, and continues to the point of abandonment or success. LaFave & Scott, Criminal Law §§ 61, 62. "New Jersey cases have repeatedly emphasized that in a conspiracy prosecution, it is the 'agreement' and the 'combination' which constitutes the essence of the offense. *State* v. *Carroll*, 51 N.J. 102, 105 [237 A.2d 878] (1968); *State* v. *Cormier*, 46 N.J. 494, 508 [218 A.2d 138] (1966); *State* v. *Dennis*, 43 N.J. 418, 423 [204 A.2d 868] (1964); *State* v. *Hutchins*, 43 N.J. 85, 92 [202 A.2d 687] (1964); *State* v. *LaFera*, 35 N.J. 75, 86 [171 A.2d 311] (1961); *State* v. *Carbone*, 10 N.J. 329, 337 [91 A.2d 571] (1952); *State* v. *Furey*, 129 N.J. Super. 12, 23 (App. Div. 1974)." *State* v. *Mazur*, 158 N.J. Super. 89, 100, 385 A.2d 878 (1978). The acts of the plaintiff, therefore, should be considered in the context of the group's activities.

The documents, on their face, implicate the plaintiff in the criminal combination and demonstrate the shared objective to violate New Jersey law. The indictment describes activity from April 16, 1978 through May 14, 1978, beginning with the purchase of a Howard 500 aircraft N137U in Illinois by a person not named in the indictment who appears to be the group's pilot. On April 20 in Danbury, Connecticut, the pilot, the plaintiff, and three others discussed arrangements made by co-conspirator Casavina to land an aircraft with a cargo of marijuana at the Trenton-Robbinsville Airport in New Jersey. The indictment describes other meetings between the plaintiff and group members, in New

York and Florida, during which they discussed the plane's fuel tank capacity and the pilot received the coordinates for the jungle airstrip in Colombia, South America. On May 9, it is alleged that the plaintiff drove the pilot and another group member to the Fort Lauderdale-Hollywood International Airport in Florida where the latter two left for Colombia, there to acquire a 4200 pound cargo of marijuana from an unindicted contact known as "Alfredo." On May 10, the indictment says that they flew the cargo to New Jersey and met with five group members, two of whom attempted to pay the owners of the airport $100,000 to permit them to unload the cargo. The indictment charges the group with possessing the marijuana on that day, unloading it from the plane, and packing it onto a truck enroute to Boston. The scene closes with the pilot clearing a residual amount of marijuana from the aircraft and the group arranging for payment for use of the truck.

It is not essential for the plaintiff to have participated in the final portion of the completed plan. See, e.g., *United States* v. *Bruno,* 105 F.2d 921 (2d Cir.), rev'd on the other grounds, 308 U.S. 287, 60 S. Ct. 198, 84 L. Ed. 257 (1939). It is essential only that he was involved in the combination which intended to violate the laws of New Jersey. "The gist of the offense is the criminal agreement which may be established by inferences drawn from the circumstances." *State* v. *Dennis,* 43 N.J. 418, 423, 204 A.2d 868 (1964). The fact that overt acts occur in other states does not mean that New Jersey loses jurisdiction to charge the plaintiff when the effect of those acts is a violation of New Jersey law. *In re Ries,* 101 N.J. Eq. 315, 340, 138 A. 586 (Ch. 1927); *Noyes* v. *State,* 41 N.J.L. 418, 422–24, aff'd, 43 N.J.L. 672 (Sup. 1879); cf. *United States* v. *Egan,*

501 F. Sup. 1252, 1257–58 (S.D.N.Y. 1980). Since conspiracy may be established by inferences from the circumstances, the documents on their face must provide the information necessary to allow for such inferences to be made. We think that reasonable inferences drawn from the description provided by the indictment of the plaintiff's alleged participation in the group's shared interest show that the plaintiff is substantially charged with violating New Jersey law.

There is no error.

In this opinion the other judges concurred.