KENNETH CLARK *v.* COMMISSIONER OF CORRECTION
(AC 24683)

Lavery, C. J., and DiPentima and Peters, Js.

Argued November 16, 2004—officially released March 22, 2005

*Kent Drager*, senior assistant public defender, for the appellant (petitioner).

*Robert J. Scheinblum*, assistant state's attorney, with whom, on the brief, was *Michael Dearington*, state's attorney, for the appellee (respondent).

*Opinion*

PETERS, J. In this petition for a writ of habeas corpus, the petitioner seeks relief from a writ of extradition sending him to Texas to face criminal charges in that state. Under the Uniform Criminal Extradition Act (act), General Statutes § 54-157 et seq., he is subject to mandatory extradition only if he is a fugitive from justice in Texas. The petitioner claims that he is not a fugitive from justice in Texas because he was taken involuntarily from Texas to this state in order to stand trial on criminal charges here. In the absence of any disputed questions of fact, the issue he raises calls for statutory construction of the act. The trial court concluded that the act authorized his extradition and dismissed the petitioner's application for the writ. The petitioner has appealed. We reverse the judgment of the trial court.

The petitioner, Kenneth Clark, filed a petition for a writ of habeas corpus in which he claimed that, because he is not a fugitive from justice, the respondent, the commissioner of correction,[1] is illegally retaining the

---

[1] The petitioner's original habeas petition named Connecticut state police Detective Jeffrey Correia as the respondent. The habeas court's memorandum of decision, however, named the respondent as an official from the department of correction. We note that the petitioner is being held by the department of correction on the basis of the governor's extradition warrant

petitioner in his custody. On April 3, 2003, the petitioner was arrested in Connecticut without a warrant, pursuant to General Statutes § 54-170,[2] as a fugitive from justice on an outstanding felony charge from the state of Texas.[3] After the petitioner refused to waive his right to challenge extradition, the trial court, *B. Kaplan, J.*, ordered the petitioner confined to enable the state to obtain a governor's extradition warrant.[4]

The facts of this case are uncontested. In 1996, the petitioner had been extradited involuntarily from Texas to this state because of an outstanding parole violation. After having been returned to this state, the petitioner was incarcerated here until April, 2000.

In pursuit of his request for extradition in the present case, the governor of Texas sent to our governor a written demand, dated April 17, 2003, for the extradition of the petitioner. See General Statutes § 54-157 et seq. In accordance with General Statutes § 54-159,[5] the

and by Detective Correia as the governor's duly authorized agent for extradition purposes. The governor's extradition warrant, therefore, authorized both named respondents to place the petitioner into custody.

[2] General Statutes § 54-170 provides in relevant part: "The arrest of a person may be lawfully made also by any peace officer or a private person, without a warrant, upon reasonable information that the accused stands charged in the courts of a state with a crime punishable by death or imprisonment for a term exceeding one year . . . ."

[3] On July, 16, 2002, the state of Texas charged the petitioner with the crime of aggravated sexual assault of a child under the age of fourteen. The charge alleged that the commission of the crime occurred on February 1, 1996.

[4] Judge Kaplan acted pursuant to General Statutes § 54-171, which provides in relevant part: "If from the examination before the judge it appears that the person held is the person charged with having committed the crime alleged and . . . that he has fled from justice, the judge shall, by a warrant reciting the accusation, commit him to a community correctional center for such a time, not exceeding thirty days . . . as will enable the arrest of the accused to be made under a warrant of the Governor on a requisition of the executive authority of the state having jurisdiction of the offense . . . ."

[5] General Statutes § 54-159 provides: "No demand for the extradition of a person charged with crime in another state shall be recognized by the Governor unless in writing alleging, except in cases arising under section 54-162, that the accused was present in the demanding state at the time of

extradition demand stated that the petitioner had been charged with the commission of a crime in the state of Texas, "was present in [Texas] at the time of the commission of said crime," "thereafter fled from the justice of [Texas]," and had taken refuge in Connecticut. The extradition demand consistently referred to the petitioner as a "fugitive."[6] In response, on April 29, 2003, our governor exercised his power, pursuant to General Statutes § 54-163,[7] to issue a warrant for the arrest of the petitioner.[8] The petitioner was arrested on May 2, 2003.

The petitioner's petition for a writ of habeas corpus to challenge his status as a fugitive was heard by the habeas court, *Hon. William L. Hadden, Jr.*, judge trial referee. Judge Hadden found that "the extradition papers [were] in order in satisfaction of General Stat-

the commission of the alleged crime, and that thereafter he fled from the state, and accompanied by a copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon; or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, confinement or parole. The indictment, information or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and the copy of indictment, information, affidavit, judgment of conviction or sentence must be authenticated by the executive authority making the demand."

[6] The accompanying application for extradition, which was prepared by the Dallas County district attorney and certified by the governor of Texas, also described the petitioner as a fugitive. In particular, the district attorney represented that the petitioner had attempted to avoid prosecution, had "fled from the jurisdiction of [Texas] and is now a fugitive from justice to be found in the custody of the State of Connecticut . . . ."

[7] General Statutes § 54-163 provides in relevant part: "If the Governor decides that the demand should be complied with, he shall sign a warrant of arrest, which shall be sealed with the state seal, and be directed to any peace officer or other person whom he may think fit to entrust with the execution thereof . . . ."

[8] The warrant referred to "the Constitution and laws of the United States" as the legal basis for its authority and described the petitioner as "having fled from [Texas] and taken refuge in the State of Connecticut . . . ."

utes § 54-159, that the petitioner has been identified as the individual the state of Texas seeks to extradite, there is probable cause to believe he committed a crime in that state, and he is a fugitive from justice." Accordingly, Judge Hadden dismissed the habeas petition and ordered the petitioner extradited to Texas. The petitioner now appeals.

As a preliminary matter, we note that the parties stand on common ground with regard to three important issues. First, the parties agree that the petitioner left Texas involuntarily when he was extradited to Connecticut in 1996. Second, they agree that Connecticut's version of the act draws a distinction between the extradition of a fugitive and the extradition of a nonfugitive. A demand for a fugitive imposes on the governor a mandatory duty of compliance,[9] whereas a demand for a nonfugitive authorizes the governor to exercise discretion to decide whether to order extradition.[10] Third, the parties agree that our resolution of the disputed issue of whether the petitioner is a fugitive from justice is dispositive for the outcome of this case. If we conclude that the petitioner was not a fugitive from justice, the respondent agrees with the petitioner that the present extradition demand was invalid.

The underlying issue in this appeal, therefore, concerns the relative scope of the mandatory and discretionary provisions of the act, as enacted in Connecticut.

[9] General Statutes § 54-158 provides in relevant part: "[I]t is the *duty* of the Governor of this state to have arrested and delivered up to the executive authority of any other state . . . any person charged in that state with treason, felony or other crime, *who has fled from justice* and is found in this state." (Emphasis added.)

[10] General Statutes § 54-161 provides in relevant part: "The Governor of this state *may also surrender* on demand of the executive authority of any other state any person in this state who is charged . . . with having violated the laws of the state whose executive authority is making the demand, *even though such person left the demanding state involuntarily.*" (Emphasis added.)

Because this is a question of statutory interpretation, our review is plenary. See, e.g., *Harris* v. *Commissioner of Correction*, 271 Conn. 808, 818, 860 A.2d 715 (2004). General Statutes § 1-2z provides that "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." If, on the other hand, the meaning of the statute is not plain and unambiguous, then "we [also] look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter for [interpretive guidance]." (Internal quotation marks omitted.) *State* v. *Boyd*, 272 Conn. 72, 76, 861 A.2d 1155 (2004).

The petitioner argues that § 5 of the act,[11] enacted in this state as General Statutes § 54-161,[12] plainly establishes the principle that a person is not a fugitive if he was removed involuntarily from the demanding state by government compulsion. From this premise, he contends that, because he was not a fugitive under § 54-161, the extradition demand from the state of Texas was invalid because it sought to extradite him as such. This misconception caused the Texas demand to mis-

---

[11] Section five of the act provides in relevant part: "Extradition of Persons Imprisoned or Awaiting Trial in Another State or Who Have Left the Demanding State Under Compulsion. . . . The Governor of this state may also surrender on demand of the Executive Authority of any other state any person in this state who is charged in the manner provided in Section 23 of this act with having violated the laws of the state whose Executive Authority is making the demand, even though such person left the demanding state involuntarily."

[12] See footnote 10.

lead our governor into believing that he had no discretion in deciding whether to extradite the petitioner.

The respondent does not challenge the petitioner's reading of § 54-161. It argues, instead, that General Statutes § 54-158 is the applicable statute because it reflects the holdings of Connecticut common-law cases decided before the enactment of the act. It is undisputed that this case law held that a person could be deemed a fugitive even if he had been removed involuntarily from the demanding state by government compulsion. *Moulthrope* v. *Matus*, 139 Conn. 272, 277–78, 93 A.2d 149 (1952), cert. denied, 345 U.S. 926, 73 S. Ct. 785, 97 L. Ed. 1357 (1953). The question is whether *Moulthrope* has been overruled by the enactment of § 54-161.

I

The uniform act was promulgated to supplement federal extradition law. Federal extradition law, which derives its authority from the United States constitution[13] and from federal statute,[14] neither requires nor prohibits the extradition of nonfugitives. *Hill* v. *Blake*, 186 Conn. 404, 408, 441 A.2d 841 (1982). By contrast,

---

[13] Article IV, § 2, cl. 2, of the federal constitution provides: "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

[14] Section 3182 of title 18 of the United States Code provides in relevant part: "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District, or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District, or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. . . ."

under federal law, extradition of fugitives is mandatory. Once the required formalities have been satisfied, a governor must comply with an extradition demand. *New Mexico ex rel. Ortiz* v. *Reed*, 524 U.S. 151, 154–55, 118 S. Ct. 1860, 141 L. Ed. 2d 131 (1998).

The uniform act not only implements the extradition requirements of federal law,[15] but also includes provisions "designed to cover cases not clearly reached by existing [federal] extradition laws." Commissioners' prefatory note, Uniform Criminal Extradition Act, 11 U.L.A. 292 (2003). The commissioners were aware of the fact that, prior to the adoption of the act, state courts were divided about the status of a person resisting extradition because he had left the demanding state under the legal compulsion of the state in which he was then residing. Id., § 5, commissioners' note, p. 464. To resolve this conflict, the commissioners drafted § 5, which permits the extradition of certain criminals not recognized as fugitives by some state courts.[16] Id.

---

[15] In *Michigan* v. *Doran*, 439 U.S. 282, 99 S. Ct. 530, 58 L. Ed. 2d 521 (1978), the United States Supreme Court held: "[T]he courts of an asylum state are bound by Art. IV, § 2 . . . by [18 U.S.C.] § 3182, and, where adopted, by the Uniform Criminal Extradition Act." (Citation omitted.) Id., 288–89. Section two of the act describes the asylum state governor's duty of compliance as mandatory with respect to extradition demands that satisfy the procedural requirements of the act. Our legislature enacted § 2 of the act as General Statutes § 54-158. See footnote 9. Section three lists several procedural requirements for extradition demands. Our legislature enacted § 3 as General Statutes § 54-159. See footnote 5.

[16] Section six is another provision of the act that recognizes a distinction between fugitives and nonfugitives. Section six was "drafted to meet the practical need of authority for the extradition of . . . criminals who . . . cannot technically be called 'fugitives.' [This section], as approved by the Conference in 1926, provide[s] for the extradition of a criminal from the state in which he acted to the state in which his acts had criminal effect. By an amendment, approved by the Conference in 1932, this section now permits the extradition of that person not only from the state in which he acted, but from any state into which he thereafter moves." Commissioners' prefatory note, Uniform Criminal Extradition Act, supra, p. 292. Our legislature enacted § 6 as General Statutes § 54-162.

Under § 5, the extradition of those who are not fugitives is left to the discretion of the governor of the state in which the putative criminal is found. Id., pp. 463–64.

When our legislature enacted § 5 of the act as General Statutes § 54-161, it modified the title of that section by deleting any reference to a person's leaving a demanding state under compulsion.[17] Without changing the text of § 5, the legislature also deleted all of the commissioners' commentary about the purpose of § 5.[18] General Statutes § 54-161 unconditionally provides, however, that our governor *"may . . . surrender . . .* any person in this state who is charged . . . with having violated the laws of [another] state . . . *even though such person left the demanding state involuntarily."* (Emphasis added.)

## II

The plain language of § 54-161 supports the petitioner's argument that our extradition law does not make it mandatory to extradite a nonfugitive. No Connecticut court has directly considered whether to attribute a different meaning to the statute.

The respondent argues, however, that our case law indirectly has declined to make the distinction between fugitives and nonfugitives that § 54-161 seems to embody. He relies on two cases, *Barrila* v. *Blake,* 190 Conn. 631, 461 A.2d 1375 (1983), and *Hill* v. *Blake,* supra, 186 Conn. 409, both of which were decided subsequent to the enactment of the act. We are not persuaded.

[17] Section five of the act is titled, "Extradition of Persons Imprisoned or Awaiting Trial in Another State or Who Have Left the Demanding State Under Compulsion." Uniform Criminal Extradition Act, supra, p. 463. General Statutes § 54-161, however, is titled, "Return to this state of person imprisoned or held in another state."

[18] See footnotes 9 and 11. In describing the bill that adopted the act, Senator John H. Shannon succinctly stated: "[T]his bill incorporates the uniform criminal extradition act in toto and enacts it into law by statute." 7 S. Proc., Pt. 4, 1957 Sess., p. 2377.

*Barrila* was a case in which the plaintiff challenged the legality of an extradition demand by asserting that he had not been present in the demanding state at the time that he allegedly committed the crime for which he was being extradited. Although the plaintiff did not contest his status as a fugitive, our Supreme Court cited *Moulthrope* for the proposition that a person is a fugitive from justice if he commits a crime in one state and is thereafter found in another state. *Barrila* v. *Blake*, 190 Conn. 634–35. The dispositive issue in *Barrila*, nonetheless, was whether the plaintiff had met his burden of proving his absence from the demanding state at the relevant time. Id., 636. That issue arose under General Statutes § 54-159, not under § 54-161. *Barrila* v. *Blake*, supra, 635–36. *Barrila*, therefore, sheds no light on the issue before us, in which the factual basis of the petitioner's claim—that he had been removed involuntarily from the demanding state by government compulsion—is not in dispute.

In *Hill* v. *Blake*, supra, 186 Conn. 409, the issue before our Supreme Court was whether an extradition warrant was invalid because the governor of this state had extradited the petitioner as a nonfugitive when the requesting papers had referred to him both as a fugitive and also as a nonfugitive. In contrast to the present case, *Hill* involved the application of General Statutes § 54-162, not § 54-161. *Hill* v. *Blake*, supra, 405 n.2. Furthermore, the petitioner in *Hill* "at no time claimed that he was not a nonfugitive." Id., 410 n.6. Here, by contrast, the petitioner's claim focuses on his fugitive status and not on alleged inconsistencies in the extradition papers.

In the absence of more persuasive Connecticut authority, we must decide this case as one of first impression. Because § 54-161 replicates a provision in a uniform statute, it is useful to look for guidance to courts in other jurisdictions that have interpreted § 5 of the act. See General Statutes § 54-185; see also *Bloom* v. *Lundburg*, 149 Conn. 67, 70, 175 A.2d 568 (1961),

cert. denied, 369 U.S. 819, 82 S. Ct. 831, 7 L. Ed. 2d 785 (1962).

The case law in other jurisdictions falls into two categories. One category consists of cases interpreting a version of the act that is similar to ours. The other category includes cases interpreting statutory language that differs substantively from that contained in our act.

Of those cases in the former category, the evolution of extradition law in New York is particularly enlightening regarding the effect of the enactment of § 5 on earlier state law precedents.[19] Prior to New York's adoption of the act, New York courts had held that, in order to be considered a fugitive from justice, one need only commit a crime in one jurisdiction and later be found in another. *People* v. *Stilwell*, 244 N.Y. 196, 201, 155 N.E. 98 (1926). After the enactment of the act in New York in 1936, courts in that state consistently have held, however, that the procedures set forth in New York's version of § 5[20] govern extradition cases involving persons who have been removed involuntarily from the demanding state by government compulsion. *People ex rel. Davis* v. *Quinlan*, 69 Misc. 2d 708, 709, 330 N.Y.S.2d 544 (1972); *People ex rel. Brunner* v. *Dominy*, 22 Misc. 2d 863, 864, 191 N.Y.S.2d 46 (1959). In such cases, extradition is contingent on the exercise of discretion by the governor. *People ex rel. Brunner* v. *Dominy*, supra, 864.

---

[19] The respondent concedes that if this case were tried in New York, the petitioner would prevail on his claim.

[20] Section 570.14 of the New York Criminal Procedure Law (McKinney 1995) provides: "The governor of this state may also surrender, on demand of the executive authority of any other state, any person in this state who is charged in the manner provided in section 570.08 with having violated the laws of the state whose executive authority is making the demand, even though such person left the demanding state involuntarily."

Section 570.08 of the New York Criminal Procedure Law does not require that an application requesting the extradition of a person allege that he or she fled from the demanding state.

Florida case law provides additional support for this interpretation of § 5. In *Matter of Extradition of Dixon*, 487 So. 2d 1195, 1197–98 (Fla. App.), review denied, 492 So. 2d 1335 (Fla. 1986), cert. denied, 479 U.S. 1054, 107 S. Ct. 928, 93 L. Ed. 2d 979 (1987), a petitioner sought habeas relief in Florida. He had fled to Mississippi after escaping from a Florida prison. Id., 1196. He later was arrested and indicted for burglary in Mississippi. Id. Before trial on that charge, however, he was extradited back to Florida to face the escape charge. Id. After his return to Florida, a warrant from Mississippi sought his extradition to face the burglary charge. Id. The Florida District Court of Appeal held that he was not a fugitive from justice in Mississippi because, when he was extradited by Florida, he had been removed from Mississippi involuntarily. Id., 1197. According to that court, the petitioner was not subject to extradition because he had "presented unrefuted evidence that he [was] not a 'fugitive' in the traditional sense . . . [by demonstrating that he] had not voluntarily absented himself from Mississippi." Id. *Matter of Extradition of Dixon* is factually on all fours with this case.[21]

Kansas is another state that has enacted a version of § 5 comparable to General Statutes § 54-161.[22] In *Dunn*

---

[21] Florida Statutes Annotated § 941.05 (2) (West 2001), which enacted § 5 of the act, provides: "The Governor of this state may also surrender on demand of the executive authority of any other state any person in this state who is charged in the manner provided in s. 941.23 with having violated the laws of the state whose executive authority is making the demand, even though such person left the demanding state involuntarily."

Florida Statutes § 941.23 does not require that an application requesting the extradition of a person allege that he or she fled from the demanding state.

[22] Section 22-2705 of the Kansas Statutes Annotated (1995) provides in relevant part: "The governor of this state may also surrender on demand of the executive authority of any other state any person in this state who is charged in the manner provided in section 22-2723 with having violated the laws of the state whose executive authority is making the demand, even though such person left the demanding state involuntarily."

Section 22-2723 of the Kansas Statutes Annotated does not require that

v. *Hindman*, 18 Kan. App. 2d 537, 540, 855 P.2d 994, review denied, 253 Kan. 857 (1993), the Kansas Court of Appeals recognized that § 5 of the act, as enacted in Kansas, provides the governor of that state with discretion to grant extradition requests when the person whose extradition was sought left the demanding state under government compulsion.

The law is different in states that have adopted a nonuniform version of the act. *Commonwealth ex rel. Bonomo* v. *Haas*, 428 Pa. 167, 236 A.2d 810 (1968), is such a case. In *Haas*, the court held that "the involuntariness of the removal to the asylum state does not prevent the petitioner from being subject to extradition under the fugitive from justice provision of the extradition statutes." Id., 170. Pennsylvania, however, has enacted a version of the act that prohibits Pennsylvania's governor from exercising discretion pursuant to § 5 because, except in cases involving § 6, it required *all* extradition warrants to "allege that the person sought 'fled' from the demanding state." Id., 171 n.2. The fact that, under Pennsylvania law, a governor does not have discretion to deny an extradition demand does not enlighten the proper interpretation of § 5 of the act in this state.

Similarly, Texas law has been inhospitable to claims based on a statutory distinction between voluntary and involuntary absence from a demanding state. The respondent cites a decision of the United States Court of Appeals for the Fifth Circuit, *Landry* v. *A-Able Bonding*, 75 F.3d 200, 205 (5th Cir. 1996). That case involved claims of false imprisonment and violation of 42 U.S.C. § 1983, and did not address any of the issues presently before us.

an application requesting the extradition of a person allege that he or she fled from the demanding state.

Although other Texas cases interpreting that state's version of § 5[23] have declined to give relief from extradition to a nonfugitive, they have done so on grounds other than those at issue in this case. In *Ex Parte Guinn*, 284 S.W.2d 721 (Tex. Crim. App. 1955), the petitioner unsuccessfully defended against extradition because he was involuntarily removed from the demanding state. Without ruling on it directly, the court rejected the petitioner's claim because of the language of Texas' version of § 5 of the act. Id., 722. In *Gaffney* v. *Texas*, 812 S.W.2d 439, 440–41 (Tex. App. 1991), the court, recognizing the difference between the text in the act and Texas law, held that, under Texas' version of § 5, "extradition is permitted even though a person leaves the demanding state involuntarily"; id.; and that "[t]his situation would necessarily not involve an allegation that [the person] fled the state . . . ." Id., 441. The court concluded that, "under the disjunctive language of [§ 3], it is unnecessary to allege all the requirements of Section 3 . . . in the form of the demand."[24] Id.

Although California also has enacted a nonuniform version of the act,[25] its courts have adopted the same

[23] Section five of article 51.13 of the Texas Code of Criminal Procedure (West 1979) provides in relevant part: "The Governor of this State may also surrender on demand of the Executive Authority of any other State any person in this State who is charged in the manner provided in Section 23 of this Act with having violated the laws of the State whose Executive Authority is making the demand, even though such person left the demanding State involuntarily."

Section twenty-three of article 51.13 of the Texas Code of Criminal Procedure does not require that a demand for the extradition of a person allege that he or she fled from the demanding state.

[24] Section three of the act was enacted in this state as General Statutes § 54-159. See footnote 5.

[25] Section 1549 of the California Penal Code (Deering 1992) provides in relevant part: "The Governor of this state may also surrender on demand of the executive authority of any other state any person in this state who is charged in the manner provided in Section 1548.2 with having violated the laws of the demanding state even though such person left the demanding state involuntarily."

Section 1548.2 of the California Penal Code provides in relevant part: "No demand for the extradition of a person charged with crime in another State shall be recognized by the Governor unless it is in writing alleging that the

rule as that of New York, Florida and Kansas. The California Supreme Court has held that the procedures set forth in California's version of § 5 of the act govern the extradition of persons who have been removed involuntarily from California by government compulsion. *In re Patterson*, 64 Cal. 2d 357, 363–64, 411 P.2d 897, 49 Cal. Rptr. 801 (1966).

Consistent with the majority of courts that have interpreted § 5 of the act, we hold that it governs the extradition of persons who have been removed involuntarily from the demanding state by government compulsion and that such persons properly are treated as nonfugitives. In our view, it is persuasive that our legislature enacted both § 3 and § 5 of the act, General Statutes §§ 54-159 and 54-161, respectively, without substantive alteration. It thereby manifested its intention that the governor's authority to order extradition depends on the status of the individual sought as having left the demanding state voluntarily or involuntarily. Its manifest intention necessarily requires limitation of *Moulthrope* v. *Matus*, supra, 139 Conn. 272, to cases involving fugitives rather than nonfugitives.

Because the petitioner in this case was removed involuntarily from Texas to Connecticut, his status vis-a-vis Texas is that of a nonfugitive. The extradition demand, which described the petitioner as a fugitive from justice, therefore, is void. See *Hill* v. *Blake*, supra, 186 Conn. 410 n.6 (recognizing that extradition warrant is invalid where accused proves in habeas proceeding that his or her status does not conform to status indicated on extradition papers).

The judgment is reversed and the case is remanded with direction to render judgment issuing a writ of habeas corpus.

In this opinion the other judges concurred.

accused was present in the demanding State at the time of the commission of the alleged crime, and that he thereafter fled from that State . . . ."