ARTHUR R. BARLOW *v.* RAYMOND M. LOPES,
COMMISSIONER OF CORRECTION
(12686)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued June 3—decision released August 12, 1986

*Elizabeth M. Inkster,* special public defender, for the appellant (petitioner).

*Arnold M. Schwolsky,* assistant state's attorney, with whom, on the brief, was *John M. Bailey,* state's attorney, for the appellee (respondent).

SANTANIELLO, J. The sole issue on this appeal is whether, under the standards established in *Staton* v. *Warden,* 175 Conn. 328, 398 A.2d 1176 (1978), the petitioner knowingly, intelligently and voluntarily waived his right to appeal. After a jury trial, the petitioner, Arthur R. Barlow, was convicted of second degree assault in violation of General Statutes § 53a-60 (a) (2). Subsequent to his conviction but prior to sentencing, he agreed that he would plead guilty under the *Alford* doctrine[1] to two unrelated charges and would waive his right to appeal the assault conviction in return for an entry of nolle prosequi on additional charges and the state's attorney's recommendation that he receive an effective sentence of six years imprisonment. The trial court accepted his pleas, acknowledged his waiver of the right to appeal and sentenced him in accordance

---

[1] *North Carolina* v. *Alford,* 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

with the plea agreement. While in the custody of the commissioner of correction,[2] he filed a petition for a writ of habeas corpus with the Superior Court, alleging, inter alia, that he had received ineffective assistance of counsel during his trial for assault and that he had not deliberately bypassed a direct appeal or foregone his right to contest his conviction because he had not knowingly, intelligently and voluntarily waived his right to appeal. The court, *Smith, J.,* denied the petition on the ground that he had deliberately bypassed his right to appeal and rejected his claim that his waiver under the plea agreement was invalid. He appeals from the judgment denying his petition. We find error and remand for further proceedings.

The relevant facts and procedural history of this case are essentially undisputed. After a jury trial before Judge Corrigan, the petitioner on October 12, 1983, was convicted of second degree assault. At the time, there were several other unrelated charges pending against him including attempted arson in the first degree, one count of carrying a dangerous weapon and various misdemeanor charges. The petitioner was defended at trial by privately retained counsel, Michael Peck, but was represented by appointed counsel, Joseph Rubin, in the other matters. Prior to sentencing on the assault conviction, Rubin and Peck negotiated a plea bargain with the state on behalf of the petitioner in which the state's attorney agreed to nolle many of the misdemeanor charges and recommend a total effective sentence of six years, in exchange for the petitioner's plea of guilty to one count of reckless endangerment and one count of carrying a dangerous weapon, and

---

[2] The petitioner was in custody when he filed his petition for habeas corpus. He has since been discharged but his appeal is not moot. "In attacking the legality of his conviction, the petitioner has stated a claim that survives his release from incarceration and parole. *Carafas* v. *LaVallee,* 391 U.S. 234, 238, 88 S. Ct. 1556, 20 L. Ed. 2d 554 (1968)." *Herbert* v. *Manson,* 199 Conn. 143, 144 n.1, 506 A.2d 98 (1986).

the petitioner's waiver of his right to appeal the assault conviction. The petitioner never discussed with Peck or Rubin the possible merits of an appeal from the assault conviction, but was advised by Rubin that, regardless of its merits, it was in his best interest to accept the plea bargain.

On the morning of November 18, 1983, the petitioner appeared before the court, *Kline, J.,* for the purpose of entering his pleas in accordance with the agreement. The court first canvassed the petitioner in connection with the guilty pleas and then inquired into whether he knowingly, intelligently and voluntarily waived his right to appeal. Only Rubin appeared on behalf of the petitioner at this proceeding. The petitioner indicated that he had some reservations about giving up his right to appeal, but that, overall, the agreement was "fair and reasonable." The court agreed that the bargain was favorable and explained to the petitioner that, in all probability, by the time his appeal is heard, he would already have served his sentence. The court opined: "We are just looking at the practicalities of the situation rather than your — when you surrender these legal rights and these are jealously guarded legal rights; and I would not want you to deprive yourself of them; except as a practical matter the question could be— very well could be moot by the time you—the appeal was perfected and the Supreme Court rendered a decision in this case." The court also stated that: "I understand that you are unhappy with the result that the jury brought in because you felt you were innocent, and you pled not guilty; but your appeal really isn't what the jury's verdict was, but any questions or errors of law that arose during the case as it was tried and any errors that might have been made on the judge's part. And as a result, you understand that's what you're appealing, questions of law, not questions of fact. Questions of fact are determined by the jury and the courts have no way of—of setting those aside unless they're com-

pletely out of line with the evidence that came in during the course of trial." The court thereafter accepted the pleas of guilty and found that the petitioner's "waiver of the right of appeal [was] made knowingly, intelligently and voluntarily."

On the afternoon of November 18, 1983, the petitioner appeared before Judge Corrigan for sentencing. The court accepted Judge Kline's earlier findings as to the plea agreement and the waiver of the right to appeal and sentenced the petitioner in accordance with the state's attorney's recommendations. No direct appeal was taken thereafter.

A petition for a writ of habeas corpus was filed on December 14, 1983, in which the petitioner alleged, inter alia, that he had received ineffective assistance of counsel during his trial for assault and that the plea agreement was invalid because he had not knowingly, intelligently and voluntarily waived his right to appeal. The petitioner requested a new trial or, in the alternative, the right to appeal the conviction directly. After reviewing the transcripts of the proceedings before Judge Kline and Judge Corrigan, the habeas court denied the petition. Focusing on the facts that the petitioner was well educated and articulate, and that, under the circumstances, the plea bargain was very favorable, the court found that, even though not advised on the possible merits of an appeal, the petitioner had knowingly, intelligently and voluntarily waived his right to appeal.

After certification, the petitioner appealed from the judgment of the habeas court. He claims that the court erred in denying his petition, arguing that the court's finding of waiver was clearly erroneous under the principles established by this court in *Staton* v. *Warden,* supra. See Practice Book § 3060D. We agree.

It is a well established principle of appellate procedure that a petitioner for a writ of habeas corpus must

allege and prove in the trial court that there has not been a deliberate bypass of the orderly procedure of a direct appeal to this court. *D'Amico* v. *Manson,* 193 Conn. 144, 146, 476 A.2d 543 (1984); *Turcio* v. *Manson,* 186 Conn. 1, 3, 439 A.2d 437 (1982). A habeas court's findings on this issue ordinarily would, if not clearly erroneous, preclude a petitioner's resort to habeas corpus in respect to any claims which could have been raised on appeal. *McClain* v. *Manson,* 183 Conn. 418, 433, 439 A.2d 430 (1981). "This principle has been modified, however, to the extent of requiring that the record before us must disclose some reasonable basis for concluding that a convicted person has intelligently, understandingly and voluntarily waived his statutory right to appeal. *Staton* v. *Warden,* [supra, 335.]" *D'Amico* v. *Manson,* supra, 146–47.

The habeas court recognized and the parties agree that the validity of the waiver is governed by the principles established by this court in *Staton* v. *Warden,* supra. *Staton* is a case remarkably similar to the one at bar, involving a habeas petition brought by a defendant convicted of robbery in the third degree. The defendant entered into a plea agreement with the state in which he bargained to withdraw his appeal of the robbery conviction and plead guilty to two other charges in return for favorable recommendations from the state's attorney at sentencing. The defendant petitioned for the reinstatement of his right to appeal but the habeas court denied the request. On appeal from the judgment denying the petition, we declined to adopt the strict rule, followed by some courts, that the state cannot under any circumstances negotiate with a defendant concerning the right to appeal. Id., 333; see *State* v. *Ethington,* 121 Ariz. 572, 592 P.2d 768 (1979); *People* v. *Butler,* 43 Mich. App. 270, 204 N.W.2d 325 (1972); *People* v. *Ramos,* 30 App. Div. 2d 848, 292 N.Y.S.2d 938 (1968). We did recognize, however, that

a defendant's statutory right to appeal is fundamental and must be "jealously protected"; *Staton* v. *Warden,* supra, 334; see also *Coppedge* v. *United States,* 369 U.S. 438, 455, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962) (Stewart, J., concurring); *D'Amico* v. *Manson,* supra, 147; Bator, "Finality in Criminal Law and Federal Habeas Corpus for State Prisoners," 76 Harv. L. Rev. 441, 453 (1963); and held that "[s]ince a criminal defendant who decides not to appeal from a judgment of conviction in effect concedes the validity of that judgment and insulates the conviction against appellate review, his decision to [waive his right to] appeal pursuant to a plea bargaining arrangement must be carefully examined. A waiver is defined as 'an intentional relinquishment or abandonment of a known right or privilege'; *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1416 [1938]; *Talton* v. *Warden,* 171 Conn. 378, 385, 370 A.2d 965 [1976]; and the right of appeal should not be considered as having been waived or abandoned except where it is clearly established that such is the case. *McKinney* v. *United States,* 403 F.2d 57, 59 (5th Cir. [1968])." *Staton* v. *Warden,* supra, 334–35; see also *D'Amico* v. *Manson,* supra, 148; *Turcio* v. *Manson,* supra, 3; *McClain* v. *Manson,* supra, 438 n.15.

In order to sustain the finding of the court below then, the record must affirmatively disclose that the petitioner knowingly, intelligently and voluntarily waived his right to appeal. *Staton* v. *Warden,* supra, 335. When determining whether the waiver of appellate rights was valid, the reviewing court should consider the facts and circumstances of the particular case, including the intelligence, background and experience of the petitioner; *McClain* v. *Manson,* supra, 432; see *Johnson* v. *Zerbst,* supra, 464; whether he was fully apprised of his right to appeal and the consequences of the abandonment of that right; *D'Amico* v. *Manson,*

supra, 149–50; *Staton* v. *Warden,* supra, 336; see *U.S. ex rel. Amuso* v. *LaVallee,* 291 F. Sup. 383, 384–85 (E.D.N.Y. 1968); *People* v. *Bailey,* 1 Cal. 3d 180, 186–87, 460 P.2d 974, 81 Cal. Rptr. 774 (1969); *People* v. *Jasper,* 107 Misc. 2d 992, 994, 436 N.Y.S.2d 185 (1981); and whether he was advised concerning the possible merits of an appeal. *Staton* v. *Warden,* supra, 335; see *Paulsen* v. *Manson,* 193 Conn. 333, 341, 476 A.2d 1057 (1984); see generally annot., 89 A.L.R.3d 864, § 3; Bond, Plea Bargaining and Guilty Pleas (2d Ed. 1982) § 5.14. We have reviewed the record in this case in accordance with these criteria and conclude that there is insufficient evidence to support the habeas court's finding of waiver.

The court below openly acknowledged that the petitioner had not been advised on the possible merits of an appeal but the court nevertheless held that the waiver was effective without such advice or understanding. This conclusion is clearly inconsistent with the standard established in *Staton* that "an agreement to waive appellate rights joined with a claim of innocence should not be accepted as a voluntary and intelligent choice until the court presented with the plea bargaining arrangement has inquired into and sought to resolve the conflict between the waiver of appeal and the claim of innocence." *Staton* v. *Warden,* supra, 335. We suggested in *Staton* that in some cases a report must be filed with the court to provide it with enough information to question the defendant adequately on his knowledge of the relative merits of the appeal.[3] Indubitably, the import of our decision was to require

---

[3] Because we find the waiver invalid on the grounds that the defendant was not advised at all on the possible merits of an appeal and was inadequately canvassed by the court on the issue, we need not decide whether a report similar to an *Anders* brief should have been filed. See *Anders* v. *California,* 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967). We do note, however, that the suggestion in *Staton* v. *Warden,* 175 Conn. 328, 398 A.2d 1176 (1978), that a report be filed, may have been included because

that the defendant be fully informed as to the possible merits of an appeal. As the United States Supreme Court stated in *McCarthy* v. *United States,* 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969), a waiver "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." See also *State* v. *Collins,* 176 Conn. 7, 9, 404 A.2d 871 (1978). In the case of a waiver of appellate rights, a convicted defendant cannot knowingly, intelligently and voluntarily waive his right to appeal without first being informed as to the likelihood of success on appeal. The trial court is obligated to ensure that the defendant has been fully advised by counsel on an appeal's possible merits. Because this important element was lacking in this case, we must conclude that the waiver was invalid.

Moreover, our review of the record reveals that the petitioner was misled by the trial court when it advised him on the relative "practicalities" of an appeal. Since, as noted above, "a decision to waive one's statutory right to appeal cannot be said to be knowingly, voluntarily and intelligently made if based upon a misapprehension as to the effect of this action; see *People* v. *Bailey,* [supra]; prior to the acceptance of an agreement to waive an appeal pursuant to a plea bargaining arrangement, care should be taken to inform the accused of the appellate rights to which he is entitled and to the consequences of this decision." *Staton* v. *Warden,* supra, 336. The trial court in this case told the petitioner that an appeal "very well could be moot by the time . . . the appeal was perfected . . . ."[4]

the defendant's counsel at trial was a public defender who had advised the trial court that, in his opinion, there was no legal basis for taking an appeal. Id., 335.

[4] The full text of the court's comments is as follows:

"The Court: Okay. Before I can accept the plea, Mr. Barlow, since there is a part of the recommended sentence, was part of the plea bargain, was your waiver of your right to appeal, I want to make sure you're giving up

The court, in essence, told the petitioner that an appeal would be meaningless because he would have served his time before the appeal was heard. This advice was clearly incorrect. It is well established that since collateral legal disabilities are imposed as a matter of law because of a criminal conviction, a case will not be declared moot even where the sentence has been fully served. *Sibron* v. *New York,* 392 U.S. 40, 53–57, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968); *Shays* v. *Local Grievance Committee,* 197 Conn. 566, 572 n.4, 499 A.2d 1158 (1985); *Phaneuf* v. *Commissioner of Motor Vehicles,* 166 Conn. 449, 452, 352 A.2d 291 (1974). The collateral consequences of a conviction are legion: subsequent con-

that right voluntarily, knowingly and intelligently. Because that's a very jealously guarded right that all defendants have.

"Now, my understanding is that you have put in quite a bit of time already in this particular case in lieu of bond, and that even if you get a five year sentence, plus a year in this case, six years, with the time you've already served and with your good time that you would be entitled to, that there's a strong possibility that your time served in total will probably not exceed the time it might take you to effect the appeal. And, therefore, as a matter of practicality, you're not really giving anything up because—because of the time constraints that you will have, the time you'll have left to serve if you take into effect—into consideration all the good time and stuff that you've probably—and the time spent in lieu of bond you already have coming to you. Is that correct? That's my understanding.

"The Defendant: Yes. Well, that was part of the agreement, your Honor.

"The Court: Yeah.

"The Defendant: I did have some reservations about giving up my appeal; but as—as discussed—

"The Court: As a practical matter—

"The Defendant: As a practical matter he indicated that it would be—possibility that the appeal would be moot after I had served and it wouldn't—

"The Court: Yeah.

"The Defendant: —probably be effective.

"Attorney Rubin: I want to clarify. I don't want to mean legally or technically moot. I mean as a practical matter, wouldn't be of much point.

"The Court: We are just looking at the practicalities of the situation rather than your—when you surrender these legal rights and these are jealously guarded legal rights; and I would not want you to deprive yourself of them; except as a practical matter the question could be—very well could be moot by the time you—the appeal was perfected and the Supreme Court ren-

victions might, as a result, carry heavier penalties and a wide range of civil rights might be affected, including a defendant's eligibility to hold public office. See *Sibron* v. *New York,* supra, 55–56; *United States* v. *Morgan,* 346 U.S. 502, 512–13, 74 S. Ct. 247, 98 L. Ed. 248 (1954). The court, in making the statements it did without alerting the petitioner to the potential collateral consequences of the conviction, misinformed him as to the desirability of an appeal and, thus, inadequately canvassed him on the waiver of his appellate rights.

The habeas court rested its finding of waiver on two grounds: the background of the petitioner and the over-

dered a decision in this case. And that's—Is that correct? That's your understanding?

"The Defendant: Yes, that was my understanding, your Honor.

"The Court: All right. Now, I just want to make sure you understand what the right of appeal is. I understand that you are unhappy with the result that the jury brought in because you felt you were innocent, and you pled not guilty; but your appeal really isn't what the jury's verdict was, but any questions or errors of law that arose during the case as it was tried and any errors that might have been made on the judge's part. And as a result, you understand that's what you're appealing, questions of law, not questions of a fact. Questions of fact are determined by the jury and the courts have no way of—of setting those aside unless they're completely out of line with the evidence that came in during the course of trial. So, you understand that's what you're giving up.

"The Defendant: Yes, sir.

"The Court: Okay. And you're giving that up voluntarily and knowingly and willfully, right?

"The Court: All right. Either of you gentlemen know why the pleas of guilty should not be accepted?

"Attorney O'Connor: No, sir.

"Attorney Rubin: No, sir, I don't. Your Honor, I want to add something for clarification.

"The Court: Sure, go ahead.

"Attorney Rubin: I don't quarrel with what the Court has said about the waiver of right of appeal; but there's something else I think should be added. In addition to the reasons the Court mentioned about why Mr. Barlow is accepting this agreement and giving up his right of appeal, an additional reason is that he feels that the overall offer is a fair and reasonable—well, is the best he's going to get. And in light of that, that's another reason he wants to accept it, the agreement.

"The Court: Well, yeah. That's why he's taking the whole plea bargain."

all favorability of the plea bargain. While the experience and education of the petitioner were proper factors for the court to consider, there can be no valid waiver without full and accurate information as to the potential merits of an appeal and the consequences of foregoing that right. As to the reasonableness of the plea arrangement, we recognize that the better the bargain, the more likely the petitioner would voluntarily have waived his right to appeal. Such a bargaining process cannot, however, displace the requirement that the petitioner be fully informed so that his choice to bargain away his right of appeal is made knowingly and intelligently.

The record does not affirmatively disclose that the petitioner knowingly, intelligently and voluntarily waived his right to appeal and, therefore, the court below erred in denying the petition for a writ of habeas corpus. The case must be remanded to give the petitioner the opportunity to present his claim of ineffective assistance of counsel. The petitioner is also free to appeal his conviction for assault directly.[5]

There is error, the judgment is set aside, and the case is remanded for further proceedings.

In this opinion, PETERS, C. J., DANNEHY and CALLAHAN, Js., concurred.

HEALEY, J., concurred in the result.

---

[5] We recognize that the effect of our decision invalidates the plea agreement between the petitioner and the state, and exposes the petitioner to the risk of further criminal prosecution. Our judgment, however, only directly affects the habeas proceedings concerning the petitioner's conviction for assault and the state must take further action on those charges affected by the agreement if their status is to be altered.