MARTIN ENGEL *v.* DAVID BOURBEAU
(12703)

HEALEY, SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued May 8—decision released August 19, 1986

*Steven A. Levy,* with whom, on the brief, were *Arthur D. Friedman* and *Arthur Levy, Jr.,* for the appellant (petitioner).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (respondent).

ARTHUR H. HEALEY, J. This appeal concerns the validity of extradition proceedings undertaken at the

request of the governor of Georgia to return the petitioner to that state. The dispositive issues[1] are whether the trial court erred in failing to consider the constitutionality of the Georgia criminal statute upon which extradition was predicated and whether the petitioner was "substantially charged" in the demanding state as required by General Statutes § 54-162.[2]

The factual background and procedural posture[3] of this case must first be addressed. The petitioner, Martin Engel, who now resides in Connecticut, was the sole owner and president from 1975 through 1980 of the Tri-Engel Dairy Corporation, a New York corporation which was a wholesale distributor of bakery ingredients. On July 25, 1980, approximately $15,000 worth of pecans was ordered from Dean's Pecan Company in Camilla, Georgia, and was shipped to the Bronx Refrigerating Company in New York City and received for the account of Tri-Engel Dairy. Engel did not personally place this order and has never been in Georgia. In October, 1980, Tri-Engel Dairy was placed in

[1] As the petitioner conceded at oral argument, we need not address the petitioner's third claim of error on certain evidentiary rulings by the trial court because of our disposition of the other issues on this appeal.

[2] General Statutes § 54-162 provides: "RETURN TO ANOTHER STATE OF PERSON WHOSE ACT IN THIS STATE CAUSED CRIME. The governor of this state may also surrender, on demand of the executive authority of any other state, any person in this state charged in such other state in the manner provided in section 54-159 with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand, and the provisions of this chapter not otherwise inconsistent shall apply to such cases, even though the accused was not in that state at the time of the commission of the crime and has not fled therefrom."

[3] The petitioner "is now at liberty on a written promise to appear." Ordinarily, a habeas writ "limits [the petitioner] to orders that either have placed him in custody or are continuing his custody." LaFave & Israel, Criminal Procedure § 26.4 (a). Because the petitioner is essentially in constructive custody and a habeas petition is the statutory mechanism by which to contest extradition, this appeal is properly before us. See *Barlow* v. *Lopes,* 201 Conn. 103, 105 n.2, 513 A.2d 132 (1986); *Herbert* v. *Manson,* 199 Conn. 143, 143–44 n.1, 506 A.2d 98 (1986); see also annot., 26 A.L.R.4th 455.

involuntary bankruptcy and it was stipulated in the habeas corpus proceeding that the debt to Dean's Pecans was discharged.

On March 30, 1981, a grand jury in Mitchell County, Georgia, returned an indictment charging the petitioner with failure to pay for agricultural products in violation of Georgia Code § 5-9914.[4] On June 16, 1982, the governor of Georgia issued a requisition warrant to the governor of Connecticut requesting the delivery of the petitioner to Georgia because of acts that he had committed in New York resulting in the commission of a crime in Georgia. On August 24, 1982, the governor of Connecticut issued a rendition warrant and the petitioner was arrested on August 31, 1982, pursuant to that warrant, by the respondent, David Bourbeau, a Connecticut state trooper. On September 22, 1982, an application for a writ of habeas corpus was filed on the petitioner's behalf and the case was assigned to a state referee, *Hon. Kenneth J. Zarilli*, for a hearing on November 22, 1982. On that day, the court requested that both parties file briefs on the constitutionality of the underlying Georgia statute and its impact, if any, on the proposed extradition. The case was then assigned to the trial court, *Gerety, J.*, and after a hearing was held on December 12, 1983, the court rendered judgment on May 24, 1984, denying the petitioner's writ. The petitioner appeals from this judgment.

---

[4] Georgia Code § 5-9914 provides: "Failing to pay for agricultural products and naval stores.

"Any person, either on his own account or for others, who shall buy cotton, corn, rice, crude turpentine, spirits of turpentine, rosin, pitch, tar, timber, pulpwood, poultry and poultry products, cattle, hogs, sheep, goats, horses, mules, pecans, peaches, apples, watermelons, cantaloupes, or other products or chattels, and shall fail or refuse to pay therefor or shall make way with or dispose of the same before he shall have paid therefor unless credit shall be expressly extended therefor, shall be guilty of a felony and upon conviction thereof, shall be imprisoned in the penitentiary for not less than one year nor more than five years."

## I

The petitioner claims that the trial court violated his right to due process by failing to consider his claim that the underlying Georgia criminal statute is unconstitutional. The trial court stated in a memorandum of decision that "the constitutionality of the Georgia statute under which the charge is made need not and should not be inquired into here." It further stated that "[o]nly if the statute is void on its face or has been declared unconstitutional by the court of last resort in the demanding state, should the courts of the asylum state interfere."[5] See *Marshall* v. *State,* 231 Ga. 89, 200

---

[5] We note that the Georgia Court of Appeals has pointed out that § 5-9914 of the Georgia Code Annotated was repealed by § 1-1-10 (a) (1) of the Official Georgia Code Annotated (OCGA) which took effect on November 1, 1982, and that the offense was not included in the new Code as originally enacted. *State* v. *Fordham,* 172 Ga. App. 853, 324 S.E.2d 796 (1984). "It was added to the new Code, however, during the following session of the General Assembly, by the enactment of OCGA § 16-9-58 (Ga. L. 1983)." *State* v. *Fordham,* supra. The language of both statutes is "identical" although their captions are different. The new section, i.e., § 16-9-58, became effective July 1, 1983.

In *Fordham,* which did not involve extradition, the defendant was indicted for offenses alleged to have been committed in July and August, 1982, at which time § 5-9914 was in effect. It would appear that the original indictments in November, 1982, were later "nol prossed." New indictments for the same acts were handed down after the new law became effective on July 1, 1983. The trial court dismissed the prosecutions which were based on the indictments returned on October 19, 1983, based on the Georgia Supreme Court's holding in *Gunn* v. *State,* 227 Ga. 787, 183 S.E.2d 389 (1971), "to the effect that the repeal of a statute making certain described conduct a crime, without a saving provision, puts an end to any prosecution for the offense which has not reached final judgment." *State* v. *Fordham,* supra.

In *Fordham,* a divided court, with five judges in the majority, one judge concurring specially and three judges dissenting, affirmed the trial court's dismissal of the indictments on the authority of the holding in *Gunn.* In so deciding, the majority said that "*Gunn* v. *State* . . . sets out the common law doctrine that where a criminal statute is repealed prior to a final judgment, and such repeal contains no saving clause, the repeal terminates the prosecution. Another recognized exception to this general rule, along

S.E.2d 268 (1973) (constitutionality of Georgia Code § 5-9914 upheld); see generally *State* v. *Ritter,* 74 Wis. 2d 227, 238 n.7, 246 N.W.2d 552 (1976). We agree.

Section 6 of the Uniform Criminal Extradition Act "was intended to reach extradition of one who commits a crime against the laws of a state by acts done outside of that state. . . . " *Hill* v. *Blake,* 186 Conn. 404, 407, 441 A.2d 841 (1982). "By an amendment approved in 1932, the present version of section 6 permits extradition not only from the state in which the nonfugitive acted but also from any state into which he may thereafter move. Handbook of the National Conference of Commissioners on Uniform State Laws & Proceedings, p. 407 (1932). Since the extradition clause of the United States Constitution neither

---

with a saving clause, is where the legislature simultaneously repeals and reenacts statutes dealing with the same conduct. Neither exception applies . . . ." *State* v. *Fordham,* supra, 854; see *Davis* v. *State,* 172 Ga. App. 893, 325 S.E.2d 926 (1984).

In this context, the attorney general of the state of Georgia, with reference to Georgia Code Annotated § 5-9914 (Ga. Laws 1959, p. 143) and OCGA § 16-9-58 (Ga. Laws 1983, p. 485) in "unofficial opinion U 83-75" (dated 12/28/83), stated in part: "In summary, it is my unofficial opinion that the failure to pay for natural products or chattels was not a crime in Georgia between November 1, 1982 and July 1, 1983." See U 83-75 Op. Att'y Gen. 325 (Ga. 1983).

The Supreme Court of Georgia, the court of last resort in the demanding state, has not had occasion to decide the question presented to its lower courts, i.e., Georgia Court of Appeals, in *Fordham* or *Davis.* We point out, however, that the Supreme Court of Georgia has upheld § 5-9914 against various attacks of unconstitutionality in a number of cases. See *Marshall* v. *State,* 231 Ga. 89, 200 S.E.2d 268 (1973); *Howard* v. *State,* 222 Ga. 525, 526, 150 S.E.2d 834 (1966); *Garmon* v. *State,* 219 Ga. 575, 577, 134 S.E.2d 796 (1964); *Coffee* v. *State,* 219 Ga. 328, 331, 133 S.E.2d 590 (1963); *Plapinger* v. *State,* 217 Ga. 11, 12, 120 S.E.2d 609 (1961). In the absence of a pertinent decision of the highest court in Georgia and certain factual distinctions between the extradition case before us and *Fordham,* a nonextradition case, we have no sound basis upon which to come to a disposition of this appeal other than as we have. The petitioner, of course, may, if he chooses, raise in the Georgia courts the viability of his further prosecution in that state.

requires nor prohibits enactment of state laws governing nonfugitive extradition, enforcement of section 6 is a matter of comity between the states. Commissioner's Prefatory Note, Uniform Criminal Extradition Act, 11 U.L.A. 53." *Hill* v. *Blake,* supra, 408.

In *Pearce* v. *Texas,* 155 U.S. 311, 314, 15 S. Ct. 116, 39 L. Ed. 164 (1894), the United States Supreme Court in an appeal from a denial of a writ of habeas corpus affirmed a court of appeals decision which left "the question as to whether the [demanding state's] statute was in violation of the Constitution of the United States" to the demanding state. "Its action in that regard simply remitted to the courts of [the demanding state] the duty of protecting the accused in the enjoyment of his constitutional rights, and if any of those rights should be denied him, which is not to be presumed, he could then seek his remedy in [the United States Supreme Court]." Id.; see *In re Cooper,* 53 Cal. 2d 772, 779, 349 P.2d 956, 3 Cal. Rptr. 140, appeal dismissed and cert. denied sub nom. *Cooper* v. *Pitchess,* 364 U.S. 294, 81 S. Ct. 104, 5 L. Ed. 2d 83 (1960) (nonfugitive's claim on habeas that demanding state's statute unconstitutional rejected by court which held that "asylum state in habeas corpus proceedings need not and should not review the constitutionality of the statute that is alleged to have been violated"); see also *Rush* v. *Baker,* 188 Colo. 136, 533 P.2d 36 (1975).

In *Michigan* v. *Doran,* 439 U.S. 282, 289, 99 S. Ct. 530, 58 L. Ed. 2d 521 (1978), the court stated that "[o]nce the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the

request for extradition;[6] and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable." See generally Nowak, Rotunda & Young, Constitutional Law (2d Ed.) p. 301. In *Hill* v. *Blake,* supra, 408–409, this court stated that *Michigan* v. *Doran,* supra, "applies by analogy to cases of nonfugitive extradition." The petitioner claims, however, that "the *Doran* ruling does not limit the scope of inquiry in nonfugitive extradition matters" and that "under the peculiar circumstances of the instant case . . . judicial review of . . . the underlying charge was and is essential" to the protection of the petitioner's rights.[7] We cannot agree and we do not depart from our holding in *Hill* v. *Blake,* supra. In *Narel* v. *Liburdi,* 185 Conn. 562, 565, 441 A.2d 177 (1981), cert. denied, 456 U.S. 928, 102 S. Ct. 1974, 72 L. Ed. 2d 443 (1982), citing *Doran,* this court stated that the "custodial court may not inquire into the merits of the charge or into any claimed procedural infirmities, constitutional or otherwise, lurking in the prosecution." See *Hendrix* v. *State,* 405 So. 2d 53, 55 (Ala. Crim. App. 1981); see generally *Pacileo* v. *Walker,* 449 U.S. 86, 101 S. Ct. 308, 66 L. Ed. 2d 304 (1980).

The trial court did not err in declining to review the constitutionality of the underlying Georgia statute as it applies to the nonfugitive petitioner.

## II

The petitioner claims that he was not substantially charged with a crime in the demanding state. General Statutes § 54-162, which authorizes the governor's ren-

---

[6] It was stipulated at the hearing before the trial court by the parties that the petitioner is the "same Martin Engel referred to in the documents forwarded with the extradition warrant from the state of Georgia."

[7] We note that in *State* v. *Higgins,* 254 Ga. 88, 90, 326 S.E.2d 728 (1985), the Supreme Court of Georgia, citing its state constitution, held a statute unconstitutional "to the extent that it authorizes imprisonment for mere nonpayment of income taxes," a "debt."

dition of a nonfugitive, requires that the person be charged in the manner provided in General Statutes § 54-159.[8] The petitioner claims that the indictment handed down in Georgia does not charge him with committing acts in New York with an intent to violate Georgia law and that the requisition and rendition warrants "repeatedly describe" him as a fugitive. The petitioner claims therefore that the documents, when viewed in their entirety, fail to substantially charge him as required by law. We disagree.

We agree with the trial court that the demand documents and the governor's arrest warrant, although "rather less than artfully drawn," were valid and adequately charged the petitioner. There are three documents that must be examined in order to determine whether the defendant has been substantially charged. When the governor of Connecticut issued his rendition warrant, he had before him a demand for extradition from the governor of Georgia certifying that: the documents attached thereto were authentic; the petitioner stood charged with the crime of failing to pay for agricultural products; the petitioner committed acts

---

[8] General Statutes § 54-159 provides: "REQUIREMENTS FOR RECOGNITION OF EXTRADITION DEMAND. No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing alleging, except in cases arising under section 54-162, that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state, and accompanied by a copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon; or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole. The indictment, information or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and the copy of indictment, information, affidavit, judgment of conviction or sentence must be authenticated by the executive authority making the demand."

in New York which resulted in the crime charged in Georgia; and the petitioner has taken refuge in Connecticut. Accompanying this request was: (1) an "Application for Governor's Requisition (when act in Asylum State or Third State Result[s] in Crime[s] in Georgia)" addressed to the governor of Georgia and dated June 9, 1982, and sworn to by a named district attorney for the South Georgia Judicial Circuit, stating that the petitioner stood accused in Georgia of failing to pay for agricultural products, that the petitioner's act or acts in New York intentionally resulted in the commission of said crime in Georgia and that he is now in Trumbull, Connecticut, as a fugitive from justice, and setting out the approximate circumstances of the said crime, and that the request is made in good faith and "not to collect a debt"; (2) an indictment, dated March 30, 1981, sworn to by a grand jury, charging the petitioner with failing and refusing to pay for pecans and with making way with or disposing of the same without having paid for them; and (3) a certification by a named Georgia court clerk, dated June 9, 1982, certifying that the indictment is a true, full and correct copy of that on file in her office; the clerk's signature and her capacity are certified by a named judge whose signature and capacity as well as the prosecuting attorney's capacity are in turn certified by the clerk. See *Fain* v. *Bourbeau,* 195 Conn. 465, 468, 488 A.2d 824 (1985).

In order to determine whether the defendant had been substantially charged, "the documents *read together* purporting to charge the accused must substantially charge him with a crime." (Emphasis added.) *Wentworth* v. *Bourbeau,* 188 Conn. 364, 370, 449 A.2d 1015 (1982). We also note that "[i]nattention to certain technicalities, however, will not render void the extradition of the accused, as the effect of such a decision would be to exalt form over substance." *Hill* v. *Blake,* supra, 409.

"[The] documents must not simply charge the [petitioner] with a crime but . . . they must specifically charge him with committing acts outside [Georgia] which intentionally resulted in the violation of [Georgia] law." Id., 411. The respondent agrees with the petitioner that the Georgia indictment does not allege that the petitioner committed acts in New York which intentionally resulted in a crime in Georgia. The petitioner contends that the indictment charges him with committing acts in Georgia while the respondent characterizes the language of the indictment as referring to the fact that the crime occurred in a certain county in Georgia. We note, however, that the indictment was issued on a preprinted form which contained certain of the language at issue, e.g., "did then and there . . . ." The indictment contains the citation for the statute allegedly violated.

The petitioner also claims that because the indictment incorrectly asserts that he was in Georgia at the time the crime was committed and venue for this offense can only lie either in the county where the accused takes possession or in the county from which he makes way with or disposes of the product; *Garmon* v. *State,* 219 Ga. 575, 579, 134 S.E.2d 796 (1964); *Williams* v. *State,* 158 Ga. App. 384, 386, 280 S.E.2d 365 (1981); then the indictment does not substantially charge him. A different interpretation of the language in the indictment, however, is also reasonably possible, e.g., that the petitioner's corporation's order for pecans received in Mitchell County, Georgia, was the equivalent of personal presence for the purposes of this statute. In *In re Cooper,* supra, 776, Justice Traynor noted: "Modern communication and transportation facilitate the commission of crimes across state lines. . . . [A] criminal who operates from without the state's borders poses a continuing threat. Since his conduct may be unde-

tected or apparently harmless in the state where he acts, the only effective impetus for prosecution may come from the state that suffers the harm."

When we read the language of the indictment together with the requisition warrant, as we must; *Hill* v. *Blake,* supra; the indictment's somewhat ambiguous charge becomes clear. The requisition warrant specifically states that the petitioner "committed" the crime charged in Georgia by committing acts in New York which resulted in the commission of the crime in Georgia. The accompanying application alleges that acts had been committed in a third state resulting in a crime in Georgia. The Georgia district attorney's summation of the "approximate circumstances" surrounding the charge does not include any reference to the defendant's personal presence in Georgia but merely recites that the "defendant contracted with the victim."

The rendition warrant[9] issued by the governor of Connecticut also notes by a specific typewritten insertion on the warrant that the petitioner "committed acts in the State of New York resulting in the commission of the crime in the State of Georgia." Despite both warrants' express reference to the commission of acts in a third state resulting in a crime in Georgia, they also refer to the petitioner as a "fugitive" rather than as a nonfugitive. The Connecticut rendition warrant does not expressly use the term "fugitive" like the Georgia warrant, but it does require the sheriff to "convey [the petitioner] back" to Georgia and to deliver him in order that he may "be taken back to said State, from which

---

[9] General Statutes § 54-163 provides: "ARREST WARRANT SIGNED BY GOVERNOR. If the governor decides that the demand should be complied with, he shall sign a warrant of arrest, which shall be sealed with the state seal, and be directed to any peace officer or other person whom he may think fit to entrust with the execution thereof. The warrant shall substantially recite the facts necessary to the validity of its issuance."

he fled . . . . '' The respondent argues that the references to the petitioner as a fugitive in the warrants ''appear to be a product of our modern reliance on forms. The forms used by both governors were primarily printed for the extradition of a fugitive.'' The trial court noted that these documents ''are sufficiently clear that they deal with the accused as a non-fugitive.'' We agree with the trial court. It is not disputed that the petitioner's extradition is sought on a nonfugitive basis. As we stated in *Hill* v. *Blake,* supra, 410, ''[w]e will not grant the [petitioner's] request to focus our inquiry on designation rather than characterization.'' ''When it appears that the requesting papers were deemed sufficient by the executive authority of the respective states for requisition and rendition, 'the judiciary should not interfere, on *habeas corpus,* and discharge the accused, upon technical grounds . . . unless it be that what was done was in plain contravention of law.' *Compton* v. *Alabama,* 214 U.S. 1, 8, 29 S. Ct. 605, 53 L. Ed. 885 (1909).'' Id., 409. Our review of the documents in this case demonstrates that the petitioner was substantially charged with a crime in the demanding state in accordance with General Statutes §§ 54-159 and 54-162.

The petitioner also raises as a part of this claim that the documents are insufficient to establish that he has been substantially charged in the demanding state because the facts in the extradition documents do not substantiate a determination of probable cause that an act was committed in New York with an intention of violating Georgia law. We see no reason to depart from our statement in *Parks* v. *Bourbeau,* 193 Conn. 270, 277, 477 A.2d 636 (1984), that ''the courts of this state will not review the finding of probable cause by the demanding state[s] . . . .'' See *Michigan* v. *Doran,* supra, 290.

The trial court did not err in denying the petition for a writ of habeas corpus.

There is no error.

In this opinion the other justices concurred.