[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION I
This is a habeas matter. The petitioner, Angel Toro, was charged, in 1996, with Robbery in the Second Degree, in violation of General Statutes, Section 53-a-135, Robbery Involving Occupied Motor Vehicle, in violation of General Statutes, Section 53a-136a
and Larceny in the Second Degree, in violation of General Statutes, Section 53a-123. Toro was convicted, after a trial by jury, of all three counts and received a total effective sentence of seven years to serve.
By petition filed April 28, 1998, the petitioner challenged his conviction, alleging ineffective assistance of trial counsel, Claude Chong. The petitioner's amended petition, filed October 5, 1998, is in three counts. By agreement of the parties and with the permission of the court, the petitioner elected to go forward on the first count only. reserving the right to proceed at a later time on counts two and three.
Count One alleges that trial counsel rendered ineffective assistance by failing adequately to advise Toro of his right to take an appeal of his conviction, and failing to protect the petitioner's access to the right to take such appeal, and that the petitioner's waiver of his right to appeal his conviction was neither knowing, intelligent nor voluntary.
A hearing was held on Count One of the petition on March 25, 1999, at which Toro and Chong testified. The parties subsequently CT Page 4222 submitted briefs and at the request of the petitioner's counsel, closing oral argument was had on December 8, 1999.
 II
With regard to the incident giving rise to the petitioner's arrest and conviction, the State claimed at trial that the petitioner was driving a motor vehicle in the Frog Hollow section of Hartford. His cousin was a passenger. The petitioner's vehicle collided with a Ford Escort operated by the victim. The petitioner and his cousin exited the vehicle, as did the victim. An altercation ensued, during which the victim was punched and knocked to the ground. The petitioner then jumped into the victim's vehicle and drove away. Within thirty minutes, the petitioner was spotted by police, driving the victim's car. A chase ensued. The petitioner abandoned the vehicle and was pursued and apprehended. The petitioner was returned to the scene of the crime, where the victim identified the petitioner as the one who'd knocked him to the ground and taken his car.
 III
During the habeas hearing Toro testified his maximum exposure at the time of sentencing was twenty, twenty-five years, that he had had two or three criminal cases previously and had previously been incarcerated; but only pretrial, that this was the first time he'd had a jury trial, that he'd never taken an appeal of a conviction. Toro testified that Chong had had no discussions with him prior to sentencing regarding a direct appeal. Toro acknowledged that at the time of sentencing he was given appeal forms but stated he later (circa January, 1997) lost them in the course of a "shakedown." Toro claimed he telephoned Chong about the lost papers, that Chong promised to help him, but never contacted Toro again.
Toro stated that following sentencing, he indicated to Chong he was relieved that his sentence was seven, rather than twenty years, that Chong said he'd be down to see Toro in lockup, but never showed up. Toro testified that at some point he told Chong that he wanted to take an appeal, and that he, Toro, never told Chong he did not want to take an appeal.
Toro testified he was nineteen years old at the time of trial and had gone as far as tenth grade in school. He described his reading skills as "Good but not so good" He testified he was born CT Page 4223 in Puerto Rico, that his primary language was Spanish, but that he spoke English pretty well.
 IV
Chong testified he was a public defender, appointed to represent the petitioner, and that he did so in pre-trial negotiations as well as at trial. These negotiations resulted in an offer of four years to serve. Chong recommended acceptance of the offer but Toro elected to go to trial. Chong believed the State had a strong case.
Chong testified he had, twice, discussed with the petitioner whether or not the petitioner should take an appeal. The first discussion took place following the verdict. The discussion lasted some fifteen minutes. Chong explained that every defendant after conviction has a right to appeal that conviction; that petitioner's maximum exposure was twenty-five years. The petitioner made no decision regarding appeal on this occasion, electing to wait until he learned what his sentence would be. The second discussion occurred following sentencing. On learning his sentence, the petitioner registered his relief and indicated to Chong he could "live with" the sentence imposed, "And his words were, I can live with this. Don't worry about it, let's you know, don't worry about any appeal." (Habeas Transcript, p. 31). Chong interpreted that to mean that the petitioner was not interested in pursuing an appeal. Chong told Toro the State's case had been strong and Toro said the same.
Chong testified that at sentencing the clerk had explained petitioner's appellate rights and given the petitioner appellate papers, and that he, Chong, had gone over them with the petitioner immediately thereafter, reading the documents to Toro and advising I Toro he had "thirty days" to file an appeal. Believing there were no meritorious issues for appeal and, as indicated, noting petitioner's relief as to the length of sentence imposed, Chong concluded Toro was not interested in an appeal and made no further effort to explore with his client the ramifications of the right to appeal.
Chong recalled two subsequent telephone calls from Toro on matters unrelated to this habeas claim and, about six months after sentencing, a call from Toro seeking help in obtaining a transcript of the trial. Chong testified that Toro never mentioned an appeal during these telephone conversations. CT Page 4224
 V
A habeas petitioner claiming a deprivation of his constitutional right to effective assistance of counsel has the burden of showing that (1) the performance of his counsel was "deficient" in that it was outside the range of reasonable, professional assistance of a competent trial or appellate lawyer and (2) that the deficient performance "prejudiced" the petitioner such that there is a reasonable probability that, but for the deficient performance of counsel, the result of the proceeding would have been different, Strickland v. Washington466 U.S. 668, 687-94, 104 S.Ct. 2052, 80 L.Ed.2d 674, (1984). Here, the petitioner failed to establish prejudice underStrickland. But this does not end the matter. In this case, the principles enunciated in Bunkley v. Commissioner of Correction,222 Conn. 444, 459 (citation omitted), are applicable. If the petitioner failed to make a knowing, intelligent and voluntary waiver of his right to appeal, the prejudice prong is satisfied.
The petitioner argues that the credibility of witnesses is not at issue here, that taking Chong's version of events as true, petitioner did not make a valid waiver of his right to appeal as required by the due process clause of the state and federal constitutions and that this claim is independent of the claim of ineffective assistance of counsel. The court agrees.
"The trial of a criminal case, and the ensuing appeal from a judgment of conviction, are not separate and distinct proceedings divorced from one another. They are part of the continuum of the process of adjudication", Bunkley v. Commissioner of Correction,
supra at 459 (citation omitted).
The court concludes that one convicted of a crime is entitled to be informed by his counsel not only of his statutory right of appeal but also counsel's judgment as to the merits of an appeal, and the possible consequences for the petitioner if he elects to appeal. The clerk's notification of the right to appeal, made pursuant to Practice Book, Section 43-30, does not relieve counsel of this responsibility. A failure adequately to advise the petitioner of his appellate rights renders his decision to forgo an appeal unknowing and involuntary and constitutes prejudice per se.
A defendant's statutory right to appeal is fundamental and must CT Page 4225 be "jealously protected", Barlow v. Lopes, 201 Conn. 103, 108-09. A waiver is "an intentional relinquishment or abandonment of a known right or privilege" (citations omitted); and the right of appeal should not be considered as having been waived or abandoned except where it is established that such is the case,Staton v. Warden, 175 Conn. 328, 334-5 (citation omitted). When determining whether the waiver of appellate rights was valid, the reviewing court must consider the facts and circumstances of the particular case, including the intelligence, background and experience of the petitioner; whether he was fully apprised of his right to appeal and the consequences of the abandonment of that right; and whether he was advised concerning the possible merits of an appeal, Barlow v. Lopes, supra, at 109-10 (citations omitted).
In this case, the court is persuaded, and the petitioner does not seriously contest, that the petitioner, following sentencing, knew he had a right to appeal. He had been told so by his trial counsel after conviction, and by the court clerk at the time of sentencing. "The knowledge that a right to appeal exists, however, is not the same as knowledge of the consequences of a decision to withdraw an appeal", Smith v. Robinson,8 Conn. App. 459, 465 (citation omitted). "The question, however, is whether he knowingly and intelligently abandoned his right of appeal". Id. Of course, here, unlike Smith, the petitioner neither appealed nor withdrew an appeal. As counsel for respondent points out, the cases cited by the petitioner in support of his claims differ from the instant matter in that the appellate courts are addressing cases where a prisoner has given up the right to appeal as part of a plea agreement. Such a waiver requires a high level of scrutiny as to its knowingness and voluntariness, higher than does a decision by one who simply elects to forego an appeal.
Even so, trial counsel has an obligation to his client that goes beyond telling the client he has a right to appeal a conviction. It requires more than advising a client that the state had had "a strong case." A strong case at trial does not preclude success by a defendant on appeal. In a situation where a client is euphoric at receiving a relatively light sentence, counsel is well advised to consult with his client regarding the pros and cons of an appeal after the euphoria has worn off. At a minimum, trial counsel should advise his client of the grounds, or lack of grounds, for an appeal, an estimate of the chances of success on appeal, an explanation of the consequences of a CT Page 4226 successful appeal, and the client's right to an "Anders" review, pursuant to Practice Book, SS. 43-34, ff.
In the instant case, the petitioner was advised he had the right to appeal his conviction. Immediately after receiving what petitioner considered a favorable sentence the petitioner indicated to counsel that he was not interested in taking an appeal. Trial counsel, who believed there were no valid grounds for an appeal, took no further steps to advise his client regarding his appeal rights. The court concludes that petitioner has established, by a fair preponderance of the evidence, that trial counsel failed to advise his client regarding his appellate rights so as to render the petitioner's decision to forgo said rights knowing and voluntary.
After a determination in a habeas corpus proceeding that a petitioner has been deprived of his right to appeal, the habeas court may allow a late appeal, despite any rule or statute to the contrary, Haynes v. Bronson, 13 Conn. App. 708, 711. The court will do so here.
Judgment may enter in favor of the petitioner on Count 1 of his petition. By way of relief, the petitioner's right to appeal his conviction is reinstated, the time to appeal to run from the date notice of this decision is given. Habeas counsel is appointed petitioner's appellate counsel.
Downey, J.