[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On November 16, 1999 the petitioner entered a guilty plea under the Alford doctrine to one count of accessory to manslaughter in the first degree with a firearm in violation of C.G.S Section 53-8b and 53a-55a and to one count of conspiracy to distribute narcotics in violation of C.G.S Sections 53a-48 and 21a-277 (a). The guilty pleas were entered before Iannotti, J., and on December 22, 1999 Iannotti, J., sentenced the petitioner to a total sentence of twenty years suspended after ten years with five years of probation.
On July 31, 1997 the New Britain, Connecticut Police executed a search warrant at 238 North Street, apartment 3W in the City of New Britain. The petitioner's were resided at said apartment but was not home at the time the search warrant was executed. The petitioner was not there either, and in fact, did not reside there because he was incarcerated in the Cheshire Correctional Institution and had been there for some time prior thereto. The police found letters signed by the petitioner which the State intended to introduce at the trial of the petitioner. The petitioner had been previously represented by Attorney Michael Graham who had passed away and was subsequently represented by Attorney Kevin Randolph as a Special Public Defender his representation commencing in December 1998 and lasting through the sentencing of the petitioner as aforesaid. Attorney Randolph, with the concurrence of the petitioner, filed a Motion to Suppress the letters which motion was heard before the Court on November 4, 1999, Espinosa, J., who subsequently denied the Motion to Suppress. It appears from the record that Judge Espinosa denied the Motion to Suppress on or about November 16, 1999 at which time the parties were prepared to CT Page 12540 select a jury for a trial on the charges facing the petitioner.
On or about January 13, 2000 the petitioner filed a writ of habeas corpus in this Court. By August 14, 2000, the petitioner was represented by Attorney Sebastian O. DeSantis as a Special Public Defender on the habeas petition who filed an amended petition on that date claiming that the petitioner "K . . . was denied his right to the effective assistance of counsel in violation of the United States Constitution Amendment Vi
and the Connecticut Constitution Article 1 Section 8 in that Attorney Randolph:
 a) Failed to preserve Petitioner's right to appeal the denial of the motion to suppress;
 b) Failed to inform the Petitioner that by pleading guilty that the Petitioner would not have a right to appeal the denial of the motion to suppress."
A hearing was held before this Court on the habeas petition on August 22, 2000 at which both the petitioner and Attorney Randolph testified. The Court received various exhibits including the transcripts of the Motion to Suppress hearing, the original jury indoctrination by Judge Espinosa on November 16, 1999, the pleas of guilty by the Alford doctrine on November 16, 1999 and the sentencing by Judge Iannotti on December 22, 1999. Briefs were then filed, the last one being filed October 3, 2000. The Court bases its decision on a review of all of the transcripts and other documents presented as exhibits at the trial and the briefs, and the credibility of the witnesses. Assessing the credibility of the witnesses the Court has taken into account their demeanor on the witness stand, the manner in which they answered questions, their interest in the outcome of this habeas petition, the consistency or inconsistency of their testimony of their own and as opposed to the exhibits and the testimony of others as well as the ability to recall or not recall eventsthat transpired. This ability to recall or not is particularly important since it involves conversations between Attorney Randolph and the petitioner which were not on the record and, therefore, not in the transcripts that the Court has reviewed.
ISSUES:
 1. Was the petitioner denied his right to the effective assistance of counsel by Attorney Randolph failing to preserve petitioner's right to appeal the denial of the Motion to Suppress?
From the totality of the evidence there is no doubt that the petitioner CT Page 12541 always wanted to appeal the denial of the Motion to Suppress. This has been admitted by Attorney Randolph. Further, clear evidence of this is petitioner's exhibits 7 and 8. These are letters to Attorney Randolph from the petitioner one dated November 1, 1999 and the other mailed to Attorney Randolph prior to the ruling on the Motion to Suppress on November 16, 1999. In both letters, which Attorney Randolph conceded he received, petitioner makes it very clear that he wants to appeal a denial of the Motion to Suppress. Attorney Randolph testified in a colloquy with Attorney DeSantis that he had the nolo contendere forms on the counsel table in the courtroom just before Judge Iannotti commenced the plea canvas. The testimony was as follows on page 51 of the habeas trial transcript hereinafter "HTT".
"Q. You stated under direct that you had the nolo contendere forms out and you were discussing with Mr. Cupe his options; did you ever explain to him that by pleading under the Alford doctrine that he would specifically be losing his right to appeal the suppression hearing?
A. I don't recall specifically telling him that, no that's why I had the forms ready.
Q. But did you explain to him that by not filling out these forms he would lose his right to appeal?
A. No."
Further, Attorney Randolph testified in answer to questions from the Court, page 53 HTT that when they were in the courtroom before Judge Iannotti "at that time, your Honor, I don't think I told him anything about the nolo plea, except, sign this."
The Court then asked "When did you talk to him about, if he doesn't plead nolo he cannot preserve his right to appeal, or did you ever say that to him? Attorney Randolph responded "I believe I did say that to him, your Honor. I don't recall whether that was in the courtroom in Judge Espinosa's courtroom or in the lockup, I don't recall."
On page 58 HTT a question to Attorney Randolph was "When you showed Mr. Cupe the nolo contendere forms at the plea do you know if Mr. Cupe actually read those papers?" Answer: "He did not."
Attorney Randolph was very candid in his responses to the questions but did not remember a number of important items. He also admitted on page 60 of the HTT that when he told the petitioner to sign the nolo contendere forms in Judge Iannotti's courtroom he did not tell him why. It is clear to this Court that the petitioner did not understand his right to plead CT Page 12542 nolo contendere or the consequences of not doing so. He relied on his attorney to preserve his right to appeal the Motion to Suppress. This right was not preserved. What should Attorney Randolph have done? He should have had the Petitioner sign the nolo contendere forms in the lockup prior to going into the courtroom for the plea canvas. In the lockup he would have had time to discuss it with him at length, and he would have had the papers already signed when they were before Judge Iannotti. [Alternatively, when the petitioner pushed the papers away, Attorney Randolph should have asked for a short recess to meet with his client and make it very clear to him that he had to sign the nolo contendere papers in order to preserve his right to appeal the Motion to Suppress. From the time Judge Espinosa sent the petitioner to Judge Iannotti's court until he appeared there was a short period of time with little opportunity for Attorney Randolph to fully explain the types of pleas and the consequences thereof. The Court, therefore, finds that Attorney Randolph did not provide effective assistance of counsel in that he did not take sufficient steps to assure that his client's right to appeal the Motion to Suppress was preserved. He did not take sufficient steps to make sure that his client understood the consequences of not pleading nolo contendere and pleading instead under the Alford doctrine. It is also clear that the petitioner did not understand the difference between a straight guilty plea and an Alford plea. Attorney Randolph further failed to inform the petitioner that by pleading guilty, under the Alford doctrine or not, the petitioner would not have a right to appeal the denial of the Motion to Suppress. This Court also concludes that Attorney Randolph's assistance as counsel was ineffective in that his actions and/or failures to act as described above fell below the standard of competence for criminal defense attorneys with ordinary training and skill in the criminal law.
As a result of the ineffective assistance of counsel described herein, the petitioner was "deprived of a significant, statutorily created right that otherwise would have afforded him opportunity to seek plenary review . . ." Iovieno v. Commissioner of Correction, 242 Conn. 689, 706 (1997). If the petitioner had been permitted to plead nolo contendere regarding the charge concerning the Motion to Suppress, he may well have succeeded in overturning the denial of the Motion to Suppress. Not being able to attempt to do that deprived him of a statutorily created right and severely prejudiced his position. As stated in Iovieno, supra, he should be returned "to the same position that he occupied at the time of counsel's deficient performance . . ." ID 707. This right to plead nolo contendere and to take an appeal from the denial of a Motion to Suppress is set forth in C.G.S Section 54-94a. Based upon the foregoing, this Court, exercising its authority under State v. Phidd, 42 Conn. App. 17
(1996) hereby restores or grants the petitioner's right to appeal the denial of the Motion to Suppress.[1]
CT Page 12543
 2. Was the petitioner's guilty plea on both charges made in a knowing, intelligent and voluntary manner?
The Court rejects petitioner's claim that the sentencing court, Iannotti, J,. should have advised the petitioner that he was giving up his right to appeal the denial of his Motion to Suppress. There is nothing in the law that requires the Court to do this, and, as a matter of fact, the Supreme Court has held that there is no duty for the Court to advise the defendant of the amount of time that he would have to serve before being eligible for parole or even whether he would be eligible for parole. Therefore, to advise him that he was giving up his right to appeal the denial of his Motion to Suppress is not a requirement in the plea canvas. The fault lies with the petitioner's counsel who should have advised him that he was giving up his right to appeal the denial of his Motion to Suppress. Based upon the testimony of both the petitioner and Attorney Randolph, the Court has concluded that the petitioner was not advised properly by Attorney Randolph that by pleading under the Alford doctrine he was giving up his right to appeal and that it was necessary to plead nolo contendere in order to preserve his right to appeal. Therefore, based upon the same ineffective assistance claim and the conclusions of this Court thereon, the Court finds that the petitioner was deprived of effective assistance of counsel as to preserving his right to appeal. Even during the sentencing hearing the petitioner still claimed he wanted to appeal the denial of the Motion to Suppress. It is clear that he gave up a right unknowingly and, therefore, his plea was not made in a knowing, intelligent, and voluntary manner.
Further, the two cases are intertwined. If petitioner should win on his appeal of the denial of the Motion to Suppress, he may well feel that he should go to trial on the attempted manslaughter charge knowing that he would not have a conviction on the drug offenses to impeach him.
In any event, the respondent has claimed that the Court granting him his right to appeal the denial of the Motion to Suppress a.s not sufficient for him to appeal the denial of the Motion to Suppress when a guilty plea is on record. The Court disagrees with this contention and believes that the petitioner may now take a direct appeal to the Appellate Court from the denial of the Motion to Suppress. However, to be sure that petitioner's rights to do so are preserved, this Court finds that for the reasons stated, primarily the petitioner's misconception of the effect his pleading guilty under the Alford doctrine would have in regard to his Appellate rights, the plea was not made knowingly, intelligently or voluntarily. This Court will overcome the objection by the respondent by vacating his pleas under both docket numbers and all charges so that he may plead nolo contendere to the drug charges and may CT Page 12544 plead whatever way he wishes to plead to the attempted manslaughter charge.
It is well settled law that a "decision to (waive his right to] appeal pursuant to a plea bargaining arrangement must be carefully examined."Barlow v. Lopes, 201 Conn. 103, 109 (1986). "The right of appeal should not be considered as having been waived or abandoned except where it is clearly established that such is the case." Barlow v. Lopes, supra, Waiver and/or abandonment have not been clearly established in the case at bar.
A habeas court shall dispose of the case as law and justice require. C.G.S Section 52-470 (a). The habeas court shall create a "remedy appropriate to the constitutional right it seeks to vindicate" James L.v. Commissioner of Correction, 245 Conn. 132, 148 (1998). Further, this Court can review an issue of a constitutional defect. See State v.Golding, 231 Conn. 233 (1989). The Court finds that the record is adequate to review the alleged claim of error, the claim is of constitutional magnitude alleging the violation of a fundamental right (the U.S. Constitution Sixth Amendment right) and the fundamental right to appeal under Section 54-94a of the General Statutes; the alleged constitutional violation clearly exists and clearly has deprived the defendant of a fair outcome of the disposition of the charges against him, and, further, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. State v.Golding, supra 239-40. Finally, habeas corpus serves as a bulwark against convictions that violate fundamental fairness. See Gaines v. Manson,194 Conn. 510, 517 (1984) It is fundamentally fair to allow the petitioner to appeal the denial of the Motion to Suppress and to have his pleas to all charges vacated.
Accordingly, the petition for habeas corpus is granted. Petitioner is hereby permitted to take a direct appeal from the denial of his Motion to Suppress. His pleas in both cases are hereby vacated permitting him to plead nolo contendere or any other plea he wishes to make on all charges.
Rittenband, JTR